# AMERICAN MEDICAL ASSOCIATION *v.* UNITED STATES.*

No. 201.   Argued December 11, 14, 1942.—Decided January 18, 1943.

---

*Together with No. 202, *Medical Society of the District of Columbia* v. *United States,* also on writ of certiorari, *post,* p. 613, to the United States Court of Appeals for the District of Columbia.

Messrs. *Seth W. Richardson* and *William E. Leahy,* with whom Messrs. *Edward M. Burke* and *Charles S. Baker* were on the brief, for petitioners.

522

*Mr. John Henry Lewin* and *Assistant Attorney General Arnold,* with whom *Solicitor General Fahy* and *Messrs. Charles H. Weston* and *Richard S. Salant* were on the brief, for the United States.

Mr. Justice Roberts delivered the opinion of the Court.

Petitioners have been indicted and convicted of conspiring to violate § 3 of the Sherman Act,[1] by restraining trade or commerce in the District of Columbia. They are respectively corporations of Illinois and of the District of Columbia. Joined with them as defendants were two unincorporated associations and twenty-one individuals, some of whom are officers or employes of one or other of the petitioners, the remainder being physicians practicing in the District of Columbia and members of the petitioners serving, as to some of them, on various committees of the petitioners.having to do with professional ethics and with the practice of medicine by petitioners' members.

For the moment it is enough to say that the indictment charged a conspiracy to hinder and obstruct the operations of Group Health Association, Inc., a nonprofit corporation organized by Government employes to provide medical care and hospitalization on a risk-sharing prepayment basis. Group Health employed physicians on a full time salary basis and sought hospital facilities for the treatment of members and their families. This plan was contrary to the code of ethics of the petitioners. The in-

---

[1] Act of July 2, 1890, § 3, c. 647, 26 Stat. 209, 15 U. S. C. § 3.

dictment charges that, to prevent Group Health from carrying out its objects, the defendants conspired to coerce practicing physicians, members of the petitioners, from accepting employment under Group Health, to restrain practicing physicians, members of the petitioners, from consulting with Group Health's doctors who might desire to consult with them, and to restrain hospitals in and about the City of Washington from affording facilities for the care of patients of Group Health's physicians.

The District Court sustained a demurrer to the indictment on the grounds, amongst others, that neither the practice of medicine nor the business of Group Health is trade as the term is used in the Sherman Act.[2] On appeal the Court of Appeals reversed, holding that the restraint of trade prohibited by the statute may extend both to medical practice and to the operations of Group Health.[3]

The case then went to trial in the District Court. Certain defendants were acquitted by direction of the judge. As to the others, the case was submitted to the jury, which found the petitioners guilty and all the other defendants not guilty. From judgments of conviction the petitioners appealed to the Court of Appeals, which reiterated its ruling as to the applicability of § 3 of the Sherman Act, considered alleged trial errors, and affirmed the judgments.[4]

We granted certiorari limited to three questions which we thought important: 1. Whether the practice of medicine and the rendering of medical services as described in the indictment are "trade" under § 3 of the Sherman Act. 2. Whether the indictment charged or the evidence

---

[2] *United States* v. *American Medical Association,* 28 F. Supp. 752.

[3] *United States* v. *American Medical Association,* 72 App. D. C. 12, 110 F. 2d 703, 710, 711.

[4] *American Medical Association* v. *United States,* 76 U. S. App. D. C. 70, 130 F. 2d 233.

proved "restraints of trade" under § 3 of the Sherman Act.   3. Whether a dispute concerning terms and conditions of employment under the Clayton and Norris-LaGuardia Acts was involved, and, if so, whether petitioners were interested therein, and therefore immune from prosecution under the Sherman Act.

*First.* Much argument has been addressed to the question whether a physician's practice of his profession constitutes trade under § 3 of the Sherman Act.   In the light of what we shall say with respect to the charge laid in the indictment, we need not consider or decide this question.

Group Health is a membership corporation engaged in business or trade.   Its corporate activity is the consummation of the coöperative effort of its members to obtain for themselves and their families medical service and hospitalization on a risk-sharing prepayment basis.   The corporation collects its funds from members.   With these funds physicians are employed and hospitalization procured on behalf of members and their dependents.   The fact that it is coöperative, and procures service and facilities on behalf of its members only, does not remove its activities from the sphere of business.[5]

If, as we hold, the indictment charges a single conspiracy to restrain and obstruct this business it charges a conspiracy in restraint of trade or commerce within the statute.   As the Court of Appeals properly remarked, the calling or occupation of the individual physicians charged as defendants is immaterial if the purpose and effect of their conspiracy was such obstruction and restraint of the business of Group Health.   The court said:[6] "And, of

---

[5] Compare *Associated Press* v. *Labor Board,* 301 U. S. 103, 128–9; *In re Duty on Estate of Incorporated Council,* 22 Q. B. 279, 293; *Maryland & Virginia Milk Producers' Assn.* v. *District of Columbia,* 119 F. 2d 787, 790; *La Belle* v. *Hennepin County Bar Assn.,* 206 Minn. 73 App. D. C. 399, 119 F. 2d 787, 790; *La Belle* v. *Hennepin County Bar Assn.,* 206 Minn. 290, 294; 288 N. W. 788, 790.

[6] 110 F. 2d 711.

course, the fact that defendants are physicians and medical organizations is of no significance, for Sec. 3 prohibits 'any person' from imposing the proscribed restraints . . ." It is urged that this was said before this Court decided *Apex Hosiery Co.* v. *Leader,* 310 U. S. 469. But nothing in that decision contradicts the proposition stated. Whether the conspiracy was aimed at restraining or destroying competition, or had as its purpose a restraint of the free availability of medical or hospital services in the market, the *Apex* case places it within the scope of the statute.[7]

*Second.* This brings us to consider whether the indictment charged, or the evidence proved, such a conspiracy in restraint of trade. The allegations of the indictment are lengthy and detailed. After naming and describing the defendants and the Washington hospitals, it devotes many paragraphs to a recital of the plan adopted by Group Health and alleges that, principally for economic reasons, and because of fear of business competition, the defendants have opposed such projects.

The indictment then recites the size and importance of the petitioners, enumerates means by which they can prevent their members from serving Group Health plans, or consulting with physicians who work for Group Health, and can prevent hospitals from affording facilities to Group Health's doctors.

In charging the conspiracy, the indictment describes the organization and operation of Group Health and states that, from January 1937 to the date of the indictment, the defendants, the Washington hospitals, and others cognizant of the premised facts, "have combined and conspired together for the purpose of restraining trade in the District of Columbia, . . ." In five paragraphs the pleading states the purposes of the conspiracy.

---

[7] Compare *Fashion Originator's Guild* v. *Federal Trade Commission* 312 U. S. 457, 465, 466, 467.

The first is the purpose of restraining Group Health from doing business; the second, that of restraining members of Group Health from obtaining adequate medical care according to Group Health's plan; the third, that of restraining doctors serving Group Health in the pursuit of their calling; the fourth, that of restraining doctors not on Group Health's staff from practicing in the District of Columbia in pursuance of their calling; and the fifth, that of restraining the Washington hospitals in the business of operating their hospitals.

After reciting certain of the proceedings and plans adopted to forward the conspiracy, the indictment alleges that the conspiracy, and the intended restraints which have resulted from it, have been effectuated "in the following manner and by the following means"; and alleges that the defendants have combined and conspired "with the plan and purpose to hinder and obstruct Group Health Association, Inc. in procuring and retaining on its medical staff qualified doctors and to hinder and obstruct the doctors serving on that staff from obtaining consultations with other doctors and specialists practicing in the District of Columbia." It states that, pursuant to this plan and purpose, the defendants have resorted to certain means to accomplish the end, and recounts them.

In another paragraph, the defendants are charged to have conspired with "the plan and purpose to hinder and obstruct Group Health Association, Inc. in obtaining access to hospital facilities for its members and to hinder and obstruct the doctors on the medical staff of Group Health from treating and operating upon their patients in Washington hospitals." It is alleged that, pursuant to this plan and purpose, defendants have done certain acts to deter hospitals with which they were connected and over which they exercised influence, from affording hospital facilities to Group Health's doctors.

The petitioners' contention is, in effect, that the indictment charges five separate conspiracies defined by their separate and recited purposes, namely, conspiracy to obstruct the business of Group Health, to obstruct its members from obtaining the benefit of its activities, to obstruct its doctors from serving it, to obstruct other doctors in the practice of their calling, and to restrain the business of Washington hospitals. The petitioners say that they were entitled to have the trial court rule upon the sufficiency in law of each of these charges and, as this was not done, the general verdict of guilty cannot stand. They urge that even though some of the named purposes relate to the business of Group Health, and that business be held trade within the meaning of the statute, yet, as the practice of medicine by doctors not employed by Group Health is not trade, and the operations of Washington hospitals are not trade, the last two purposes specified cannot constitute violations of § 3 and the jury should have been so instructed. In this view they insist that the jury may have convicted them of restraining physicians unconnected with Group Health, or of restraining hospitals, and, if so, the verdict and judgment cannot stand.

If in fact the indictment charges a single conspiracy to obstruct and restrain the business of Group Health, and if the recited purposes are really only subsidiary to that main purpose or aim, or merely different steps toward the accomplishment of that single end, and if the cause was submitted to the jury on this theory, these contentions fail.

When the case first went to the Court of Appeals that tribunal construed the indictment as charging but a single conspiracy. It said: [8] "The charge, stated in condensed form, is that the medical societies combined and conspired to prevent the successful operation of Group Health's

[8] 110 F. 2d 711.

plan, and the steps by which this was to be effectuated were as follows: (1) to impose restraints on physicians affiliated with Group Health by threat of expulsion or actual expulsion from the societies; (2) to deny them the essential professional contacts with other physicians; and (3) to use the coercive power of the societies to deprive them of hospital facilities for their patients."

In the trial, the District Court conformed its rulings to this decision and submitted the case to the jury on the theory that the indictment charged but one conspiracy.

We think the courts below correctly construed the indictment. It is true that, in describing the conspiracy, five purposes are stated which the conspiracy was intended to further, but, in a later paragraph, still in the charging part of the instrument, it is alleged that the purpose was to hinder and obstruct Group Health in various ways and by various coercive measures, which are identical with the "purposes" before stated. The trial judge, after calling the jury's attention to the juxtaposition of these two formulations of the charge, added:

"These purposes, it is alleged, were to be attained by certain coercive measures against the hospitals and doctors designed to interfere with employment of doctors by Group Health and use of the hospitals by members of its medical staff and their patients. . . ."

In immediate context the judge added:

"To sustain that charge the Government must prove beyond a reasonable doubt that a conspiracy did in fact exist to restrain trade in the District in at least one of the several ways alleged, and according to the particular purpose and plan set forth."

At another point, the trial judge summarized the Government's claim that the evidence in the case showed opposition by the petitioners to Group Health and its plan; that they feared competition between the plan and the

organized physicians and that, to obstruct and destroy such competition, the petitioners conspired with certain officers and members and hospitals to prevent successful operation of Group Health's plan by imposing restraints upon physicians affiliated with Group Health, by denying such physicians professional contact and consultation with other physicians, and by coercing the hospitals to deny facilities for the treatment of their patients. Again the judge charged: "Was there a conspiracy to restrain trade in one or more of the ways alleged?" And again: "If it be true . . . that the District Society, acting only to protect its organization, regulate fair dealing among its members, and maintain and advance the standards of medical practice, adopted reasonable rules and measures to those ends, not calculated to restrain Group Health, there would be no guilt, though the indirect effect may have been to cause some restraint against Group Health."

We need add but a word as to the sufficiency of the proof to sustain the charge. The petitioners in effect challenge the sufficiency, in law, of the indictment. They hardly suggest that if the pleading charges an offense there was no substantial evidence of the commission of the offense. But, however the argument is viewed, we agree with the courts below that the case was one for submission to a jury. No purpose would be served by detailed discussion of the proofs.

*Third.* We hold that the dispute between petitioners and their members, and Group Health and its members, was not one concerning terms and conditions of employment within the Clayton [9] and the Norris-LaGuardia [10] Acts.

Section 20 of the Clayton Act, as expanded by § 13 of the Norris-LaGuardia Act, is the only legislation which

---

[9] 38 Stat. 730, §§ 6 and 20, 15 U. S. C. 17, 29 U. S. C. 52.

[10] 47 Stat. 70, §§ 4, 5, 6, 8 and 13, 29 U. S. C. §§ 104, 105, 106, 108 and 113.

can have any bearing on the case. Section 20 applies to cases between "an employer and employees, or between employers and employees, or between employees, or between persons employed and persons seeking employment, involving, or growing out of, a dispute concerning terms or conditions of employment . . ."; and provides that none of the acts specified in the section shall "be considered or held to be violations of any law of the United States."

Section 13 of the Norris-LaGuardia Act defines a labor dispute as including "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee." It also provides that "A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as defined in this section) of 'persons participating or interested' therein (as defined in this section)."

Citing these provisions, the petitioners insist that their dispute with Group Health was as to terms and conditions

of employment of the doctors employed by Group Health since the District Medical Society objected to its members, or other doctors, taking employment under Group Health on the terms offered by that corporation. They assert that § 20 of the Clayton Act, as expanded by § 13 of the Norris-LaGuardia Act, includes all persons and associations involved in a dispute over terms and conditions of employment who are engaged in the same industry, trade, craft, or occupation, or have direct or indirect interests therein. And they rely upon our decisions in *New Negro Alliance* v. *Sanitary Grocery Co.,* 303 U. S. 552, and *Drivers' Union* v. *Lake Valley Co.,* 311 U. S. 91, as bringing within the coverage of the acts a third party, even though that party be a corporation not in trade, and employers and employers' associations even though they be only indirectly interested in the controversy. They insist that as the petitioners and Group Health, its members and doctors, other doctors and the hospitals, were either directly or indirectly interested in a controversy which concerned the terms of employment of doctors by Group Health, the case falls within the exemption of the statutes and they cannot be held criminally liable for a violation of the Sherman Act.

It seems plain enough that the Clayton and Norris-LaGuardia Acts were not intended to immunize such a dispute as is presented in this case. Nevertheless, it is not our province to define the purpose of Congress apart from what it has said in its enactments, and, if the petitioners' activities fall within the classes defined by the acts, we are bound to accord petitioners, especially in a criminal case, the benefit of the legislative provisions.

We think, however, that, upon analysis, it appears that petitioners' activities are not within the exemptions granted by the statutes. Although the Government asserts the contrary, we shall assume that the doctors having

contracts with Group Health were employes of that corporation. The petitioners did not represent present or prospective employes. Their purpose was to prevent anyone from taking employment under Group Health. They were interested in the terms and conditions of the employment only in the sense that they desired wholly to prevent Group Health from functioning by having any employes. Their objection was to its method of doing business. Obviously there was no dispute between Group Health and the doctors it employed or might employ in which petitioners were either directly or indirectly interested.

In truth, the petitioners represented physicians who desired that they and all others should practice independently on a fee for service basis, where whatever arrangement for payment each had was a matter that lay between him and his patient in each individual case of service or treatment. The petitioners were not an association of employes in any proper sense of the term. They were an association of individual practitioners each exercising his calling as an independent unit. These independent physicians, and the two petitioning associations which represent them, were interested solely in preventing the operation of a business conducted in corporate form by Group Health. In this aspect the case is very like *Columbia River Packers Assn.* v. *Hinton,* 315 U. S. 143. What was there decided requires a holding that the petitioners' activities were not exempted by the Clayton and the Norris-LaGuardia Acts from the operation of the Sherman Act.

The judgments are

*Affirmed.*

MR. JUSTICE MURPHY and MR. JUSTICE JACKSON took no part in the consideration or the decision of this case.