UNITED STATES of America
v.
Salvatore MALFETTI.
Crim. A. No. 177–52.

United States District Court
D. New Jersey.
Oct. 20, 1954.

Raymond Del Tufo, Jr., U. S. Atty., Newark, N. J., for the Government.

Salvatore Malfetti, Pro Se, Atlanta, Ga.

SMITH, District Judge.

The defendant was tried and convicted on an indictment which charged him and another with a violation of Section 659 of Title 18 U.S.C.A., to wit, the theft of merchandise from an interstate shipment of freight. The co-defendant, one Frank Lanzetti, was acquitted. The matter was heretofore before this Court on a motion for a new trial based solely on the ground of newly discovered evidence. This motion was denied after a full hearing on the merits. United States v. Malfetti, D.C., 117 F.Supp. 468. The decision of this Court was affirmed by the United States Court of Appeals. United States v. Malfetti, 3 Cir., 213 F.2d 728. The matter is again before the Court on a "Petition for Writ of Error Coram Nobis." The grounds urged in support of the application are within the purview of Section 2255 of Title 28 U.S.C.A., and we have therefore regarded the "petition" as a motion under this section.

The petition, consisting of thirteen pages and twenty-four numbered paragraphs, is repetitious and argumentative, but its principal allegations assail the competence of defense counsel, par-

ticularly his trial strategy. These allegations, paragraphs 4 to 10, inclusive, are quoted in the appendix hereto annexed. However, the grounds urged in support of the motion, as we interpret the allegations of the petition, are: first, that defense counsel was incompetent; second, that the defendant was therefore denied the effective assistance of counsel; and third, that the defendant was denied a fair and impartial trial. The last ground seems to be predicated on the alleged incompetence of defense counsel.

The defendant complains that the disclosure of his criminal record early in the trial was a blunder in strategy and prejudicial to his defense. This complaint is apparently based upon the opening statement of defense counsel in which he conceded the prior criminal record of his client. An examination of the record discloses but two cursory references to the defendant's record. Defense counsel stated, at page 13, "I say in the beginning, the man has a criminal record, there is no doubt about that, but we can't try him purely on his record, that is past." He stated further, at page 15, "We say that the story as told by the Government is not true. I think this whole case here started off and it had to be developed, they had to get somebody, maybe some of the 'pets,' even Malfetti with all his criminal record." We purposely refrain from any criticism of this obvious frankness of defense counsel except to observe that there are competent lawyers who might regard this disclosure as good trial strategy especially where it is expected that the defendant will testify on his own behalf.

The defendant complains further that he was reluctant to testify on his own behalf and that he was persuaded to do so by his defense counsel. There can be no doubt that under the applicable rules of evidence the criminal record of the defendant would not have been revealed if he had not taken the witness stand. However, if the defendant had failed to testify on his own behalf, the testimony of the Government's principal witness would have been uncontradicted.

The case against the defendant rested primarily on the uncorroborated testimony of one Lawrence Ruggierio, an employee of the carrier, who identified the defendant as a participant in the offense. The defendant denied his participation in the offense and testified that at the time of its commission he was in a neighborhood tavern, approximately six blocks from the scene, where he was engaged in a card game with several other patrons. The defense of "alibi" interposed at the trial rested solely on the defendant's testimony.

We are of the opinion that the allegations of the petition, considered in the light most favorable to the defendant, will not support the grounds upon which the motion is based. Assuming, but not deciding, that defense counsel was guilty of the several errors of judgment with which he is here charged, these errors in judgment were not such as to entitle the defendant to a new trial. It is well settled that "error in judgment, incompetency or mismanagement of the defense by counsel is generally not ground for a new trial." Burton v. United States, 80 U.S.App.D.C. 208, 151 F.2d 17, 18, and the cases hereinafter cited. "If a defendant were permitted to have a new trial because his self-employed counsel did not conduct the trial in a manner satisfactory to him, there would seldom, if ever, be a final termination of criminal charges." United States v. Hack, 7 Cir., 205 F.2d 723, 727. The effective assistance of counsel cannot be measured solely by the outcome of the trial.

A defendant "who appears before the court with counsel employed for his defense is not deprived of his constitutional right to the assistance of counsel merely because in retrospection he concludes that such representation did not meet his standards of effectiveness." Moss v. Hunter, 10 Cir., 167 F.2d 683, 684, and the cases therein cited. It has been uniformly held that "unless the

purported representation by counsel was such as to make the trial a farce and a mockery of justice, mere allegations of incompetency or inefficiency of counsel will not ordinarily suffice as grounds for the issuance of a writ of habeas corpus or the granting of a petition pursuant to 28 U.S.C. 2255." United States v. Wight, 2 Cir., 176 F.2d 376, 379, and the cases therein cited.

■ The well considered opinion of the Court in the case of Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, 669, certiorari denied 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002, is apposite here, and we therefore quote from it at length.

"The Supreme Court has been jealous in preserving the right of every accused to a fair trial. It has held that a defendant's right to assistance by counsel is not satisfied by the mere formality of an appointment of an attorney by the court. There must be 'effective' representation. We are aware that if that word be construed in a broad and liberal sense it would follow that on habeas corpus the court would have to review the entire trial and consider all the alleged mistakes, failures to object to the introduction of evidence and errors in advice which the ingenuity of a convict could set down on paper during the enforced leisure of his confinement. This would become necessary under the ruling of the Supreme Court that a hearing must be held on a petition for habeas corpus which contains allegations sufficient on their face regardless of their improbability.

"The result of such an interpretation would be to give any Federal prisoner a hearing after his conviction in order to air his charges against the attorney who formerly represented him. It is well known that the drafting of petitions for habeas corpus has become a game in many penal institutions. Convicts are not subject to the deterrents of prosecution for perjury and contempt of court which affect ordinary litigants. The opportunity to try his former lawyer has its undoubted attraction to a disappointed prisoner. In many cases there is no written transcript and so he has a clear field for the exercise of his imagination. He may realize that his allegations will not be believed but the relief from monotony offered by a hearing in court is well worth the trouble of writing them down. To allow a prisoner to try the issue of the effectiveness of his counsel under a liberal definition of that phrase is to give every convict the privilege of opening a Pandora's box of accusations which trial courts near large penal institutions would be compelled to hear.

"Moreover, even if the allegations of mistakes on the part of counsel happen to be true it is not practical to review them on habeas corpus except as details in a larger picture. Few trials are free from mistakes of counsel. How much these mistakes contributed to the result can never be measured. There are no tests by which it can be determined how many errors an attorney may make before his batting average becomes so low as to make his representation ineffective. The only practical standard for habeas corpus is the presence or absence of judicial character in the proceedings as a whole.

"For these reasons we think absence of effective representations by counsel must be strictly construed. It must mean representation so lacking in competence that it becomes the duty of the court or the prosecution to observe it and to correct it. We do not believe that allegations even of serious mistakes on the part of an attorney are ground for habeas corpus standing alone. The cases where the Supreme Court has granted habeas corpus on the ground that there was no fair trial support this interpretation of the absence of effective representation. They are all cases where the circumstances surrounding the trial shocked the conscience of the court and made the proceedings a farce and a mockery of justice. Measured by the test of these cases the allegations in the petition before us are insufficient to require a hearing."

■■ The defendant seems to rely also on the fact that his co-defendant was

acquitted. The acquittal of his co-defendant is not determinative of the defendant's right to a new trial. Bridgman v. United States, 9 Cir., 183 F.2d 750, 753; United States v. Hare, 7 Cir., 153 F.2d 816, 819; American Medical Ass'n v. United States, 76 U.S.App.D.C. 70, 130 F.2d 233, 252, affirmed 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. 434; Chiaravalloti v. United States, 7 Cir., 60 F.2d 192, 193. Even if we assume that the verdicts were inconsistent, the inconsistency did not invalidate the verdict returned against the defendant. We might add that the verdicts were not necessarily inconsistent; the evidence against both defendants was not the same in all respects.

We are of the opinion that the allegations of the petition, considered in the light of the entire record, conclusively show that the defendant is not entitled to relief. The "Petition for Writ of Error Coram Nobis," treated as a motion under Section 2255 of Title 28 U.S.C.A., will therefore be denied.

### Appendix

"4. That petitioner was not properly represented in, and during his trial proceedings by competent counsel, that at no time, either before or during petitioner's trial proceedings, did his counsel abide by any of petitioner's suggestions. However, petitioner was not aware of such incompetence of his counsel until after the trial proceedings was over— even though petitioner had, at certain phases of trial proceedings suspected things were not going just right, he trusted and relied upon counsel's competence and good faith during his trial proceedings, and by doing so, followed his counsel's advice and believed him to be working in the full interest of petitioner's defense; but later, petitioner claimed his past record had been exposed to the members of the jury trying him, even before his trial proceedings started. This was a violation of petitioner's constitutional rights and of the Federal Rules of Criminal Procedure. However, your petitioner having no knowledge of his rights while being on trial, thought this was the usual procedure of the trial court's proceedings when his counsel read petitioner's past record off to the jury and the Court even though his trial proceedings had not yet begun.

"5. That petitioner avers and states; he was not going to take the stand because he felt that by doing so, he would probably become excited and nervous, causeing the jury to form their opinion towards petitioner's—guilt. But, at the end of petitioner's first day of his trial, he overheard his counsel having a conversation with prosecuting attorney, and heard prosecuting attorney ask his counsel "if he was going to place his client on the stand tomorrow;" since you have already made known to the jury your client's (Petitioner's) past record? and to this, petitioner's counsel replied; "I do not know yet."

"6. That your petitioner is confused as to his counsel's actions in regards this display of procedure and manner in which defense counsel informed the jury of petitioner's past record. However, when petitioner called this to his counsel's attention, the counsel for petitioner informed him "this won't make any difference one way or the other, as you'll have to take the stand later, anyhow."

"7. That your petitioner was coaxed and advised by his counsel on the second day of his trial, to take the stand; his counsel telling him, "and don't worry none over your record being brought to light, as the jury already learned of this yesterday"; and petitioner believing his counsel to have his interest and welfare in mind, done as his counsel advised him, and took the stand, this, and many other blunders by his counsel, leaves your petitioner to believe this disinterest and incompetence by his counsel, as is pointed out, was the cause for petitioner being found guilty, and he now seeks further relief through this Honorable Court in this, his *Petition for Writ of Error Coram Nobis*

"8. That your petitioner contends; because of such blunders and such incompetence by his counsel, he was practically forced into taking the stand, caus-

**32**

ing petitioner to testify against himself. That because of such incompetent counsel he was led into a position wherein, his freedom was in jeopardy at every phase of his trial proceedings. That there never was any actual "bona fide— evidence" to prove your petitioner guilty, beyond a reasonable doubt.

"9. That your petitioner's chances for a "fair and impartial trial" were so small, and so hampered beyond comprehension; and this is plainly shown all through petitioner's instant cause of action as cited herein. That petitioner was arrested and placed on trial with another (co-defendant), and both were charged—with the same offense, "Theft-Interstate". However, the co-defendant was acquitted of this same charge, and your petitioner was found guilty. Both defendants were placed on the stand by their defense counsel, both had the same counsel, and only petitioner was the one with any "past record."

"10. That your petitioner was mistakenly identified as being at the scene of alleged crime, and was in the company of friends, on the night of alleged crime, and was no-wheres' near such a crime. Nor, had he any knowledge of the commission of such crime."