Herman L. BALLARD et al., Appellants,

v.

BLUE SHIELD OF SOUTHERN WEST
VIRGINIA, INC., a West Virginia
Corporation, et al., Appellees.

Herman L. BALLARD et al., Appellees,

v.

MONONGAHELA MEDICAL–SURGICAL
SERVICE, INC., a West Virginia
Corporation, et al., Appellants,

and

Blue Shield of Southern West Virginia,
Inc., a West Virginia Corporation, et
al., Defendants.

Herman L. BALLARD et al., Appellees,

v.

WEST VIRGINIA MEDICAL SERVICE,
INC., a West Virginia Corporation, et
al., Appellants,

and

Blue Shield of Southern West Virginia,
Inc., a West Virginia Corporation, et
al., Defendants.

Nos. 75–1982 to 75–1984.

United States Court of Appeals,
Fourth Circuit.

Argued April 9, 1976.

Decided Oct. 19, 1976.

William D. Levine, Huntington, W.Va. (Marshall & St. Clair, David B. Daugherty, Huntington, W.Va., on brief), for appellants in 75–1982 and for appellees in 75–1983 and 75–1984.

William T. O'Farrell, Charleston, W.Va., Frederick P. Stamp, Jr., Wheeling, W.Va. (Schrader, Miller, Stamp & Recht, Wheeling, W.Va., Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., William T. Han-

cock, Charles W. Davis, Richardson, Kemper & Hancock, Bluefield, W.Va., Fred Adkins, Thomas H. Gilpin, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W.Va., W. E. Mohler, Charleston, W.Va., Herbert G. Underwood, James M. Wilson, Steptoe & Johnson, Clarksburg, W.Va., on brief), for appellants in 75–1983 and 75–1984 and appellees in 75–1982.

Before BOREMAN and BRYAN, Senior Circuit Judges, and BUTZNER, Circuit Judge.

BUTZNER, Circuit Judge:

Six West Virginia chiropractors appeal from a judgment of the district court dismissing their antitrust suit against six corporations that sell Blue Cross-Blue Shield health insurance, the doctors who are directors of the corporations, and the West Virginia State Medical Association. Several of the defendants appeal from the denial of their motion to dismiss for lack of venue. Relying largely on three recent Supreme Court opinions,[1] which were not available to the district judge, we reverse the judgment of dismissal, affirm the order sustaining venue, and remand the case for further proceedings.

The chiropractors allege that the physicians, the medical association, and the corporations combined and conspired to refuse health insurance coverage for chiropractic services. This denial of coverage, the chiropractors claim, violates sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2) because it restrains and monopolizes the distribution of both health services and health insurance by making chiropractic services financially unattractive to consumers. They charge that the purpose and effect of the denial of coverage is to eliminate the competition of chiropractors throughout the state. The plaintiffs also asked for certification of the case as a class action on behalf of all West Virginia chiropractors.

The defendants moved to dismiss the case for lack of jurisdiction and venue and for failure to state a claim for which relief can be granted.

The district court dismissed the case on the pleadings, holding that the alleged conduct did not affect interstate commerce and that the McCarran-Ferguson Act and the learned profession doctrine exempted the defendants' activities from the antitrust laws. The court denied the defendants' motion to dismiss for improper venue and the chiropractors' request for certification of a class action.

I

The complaint alleges that the defendants' violations of the Sherman Act adversely affect interstate commerce by reducing the sale of therapeutic devices and equipment that are manufactured outside of West Virginia and purchased by chiropractors and their patients in the state. The complaint also charges that the violations increase the cost of health care to a substantial number of patients who travel in interstate commerce for chiropractic treatment, and that the defendants' monopoly injures interstate insurance companies that pay chiropractic claims.

■ It is well settled "[t]hat wholly local business restraints can produce the effects condemned by the Sherman Act." *United States v. Employing Plasterers Association*, 347 U.S. 186, 189, 74 S.Ct. 452, 454, 98 L.Ed. 618 (1954). Although merely incidental effects are insufficient, the restraints need not have a direct effect on interstate commerce to support jurisdiction. *Doctors, Inc. v. Blue Cross of Greater Philadelphia*, 490 F.2d 48, 51–53 (3rd Cir. 1973). The applicable test is whether "the allegations in the complaint, if proven, could show that the conspiracy resulted in *'unreasonable burdens on the free and uninterrupted flow'*" of goods and services in interstate commerce. *Hospital Building Co. v. Rex Hospi-*

---

1. *Cantor v. Detroit Edison Co.*, —— U.S. ——, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976); *Hospital Building Co. v. Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Goldfarb v.* *Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). All were decided after the district court entered its judgment.

*tal,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976).

■ In *Hospital Building Co.,* the hospital alleged that it purchased a substantial proportion of its supplies from out-of-state sources, that much of its revenue came from out of state, that it paid a management fee to an out-of-state company, and that its financing for a proposed expansion was from out-of-state lenders. The Court held this combination of factors to be sufficient to establish a substantial effect on interstate commerce within the meaning of the act. It also reiterated that "in antitrust cases, . . . dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." 425 U.S. at 746, 96 S.Ct. at 1853.

Following the "rigorous standard" prescribed in *Hospital Building Co.,* 425 U.S. at 738, 96 S.Ct. 1848, we hold that the district court erred in dismissing this case on the pleadings. It is possible that the alleged reduction or elimination of the chiropractors' business throughout the entire State of West Virginia may adversely affect interstate commerce. At this stage in the proceedings, we cannot say with certainty that the effect on commerce is so insubstantial as to deny federal jurisdiction.

## II

The district court also held that the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1013, exempts the corporate defendants from the operation of the antitrust laws because they conduct the business of insurance under regulation by West Virginia. The court's ruling, however, skirts a pivotal issue of this controversy.

■ The McCarran-Ferguson Act's exemption of state regulated insurance business from federal antitrust laws is not absolute. Congress expressly provided that the Sherman Act should remain applicable to boycotts and agreement to boycott. 15

U.S.C. § 1013(b).[2] *See generally* 7 Von Kalinowski, Antitrust Laws and Trade Regulation § 47.03 (1976). The Sherman Act proscribes even a peaceful, primary boycott designed to dissuade persons from dealing with others. *Duplex Printing Press Co. v. Deering,* 254 U.S. 443, 466–68, 41 S.Ct. 172, 65 L.Ed. 349 (1921). Consequently, the McCarran-Ferguson Act condemns this type of boycott. *Cooperativa de Seguros Multiples v. San Juan,* 294 F.Supp. 627 (D.P.R. 1968).

■ The complaint alleges that the defendants have combined and conspired to refuse insurance coverage for the services offered by chiropractors, to refuse payment of claims for services rendered by chiropractors even though claims for identical services rendered by physicians are honored, and to refuse permission for chiropractors to participate as officers in the companies offering Blue Shield Plans. Although the complaint does not employ the term "boycott", we believe these allegations sufficiently charge a group boycott in violation of the Sherman Act. *Cf. Radovich v. National Football League,* 352 U.S. 445, 453, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957). The complaint, therefore, alleges conduct that falls within § 1013(b) of the McCarran-Ferguson Act subjecting the insurance companies, and those who have conspired with them, to the antitrust laws. *Cf. Monarch Life Insurance Co. v. Loyal Protective Life Insurance Co.,* 326 F.2d 841 (2d Cir. 1963); *Hill v. National Auto Glass Co.,* 293 F.Supp. 295 (N.D.Calif.1968).

## III

■ The defendants contend that under the doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), they enjoy an exemption from the Sherman Act "wider in scope" than that afforded by the McCarran-Ferguson Act. The district

---

**2.** Title 15 U.S.C. § 1012(b) grants the business of insurance a qualified exemption from the Sherman Act. This exemption is specifically limited by 15 U.S.C. § 1013(b), which provides:

"Nothing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation."

judge properly declined to base his decision on this defense. The doctrine of *Parker v. Brown* deals with ascertaining the extent to which Congress intended a state's displacement of competition to be exempt from the Sherman Act. Section 1013(b) of the McCarran-Ferguson Act expresses congressional intention to subject boycotts by insurance companies to the Sherman Act. Consequently, there can be no justification for utilizing the principles of *Parker v. Brown* to impute a contrary intent to Congress.[3]

Furthermore, no action on the part of West Virginia compels the defendants to exclude the chiropractors from their insurance plans. West Virginia law specifically authorizes the defendant companies to insure the costs of chiropractic treatment,[4] but the defendants have elected not to provide this coverage. Therefore, they can claim no immunity under *Parker v. Brown. Cantor v. Detroit Edison Co.,* —— U.S. ——, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976); *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 788–92, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975).

### IV

The district court ruled that the physicians "are members of a 'learned profession' and their activities, as described in the complaint, are neither trade nor commerce, and, therefore, not subject to the provisions of the Sherman Act." We believe, however, that this ruling is not in accord with Supreme Court decisions where the learned profession defense was rejected.

■ *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), and *American Medical Association v. United States,* 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. 434 (1943), teach that the payment exchanged for professional services constitutes trade or commerce. The Sherman Act contains neither an express nor an implied exclusion of commercial activity generated by the professions. Nor does the Act exempt practitioners of a learned profession from the class of persons who are subject to its prohibitions. Therefore, if the commerce produced by professional services is interstate in character, it is covered by the Sherman Act, and a conspiracy to restrain or monopolize it is prohibited. The professional status of the persons who engage in this commercial activity, as well as the status of those who conspire to restrain or monopolize it, is immaterial. *Goldfarb,* 421 U.S. at 785–88, 95 S.Ct. 2004; *American Medical Association,* 217 U.S. at 528, 63 S.Ct. 326. *See generally* 7 Von Kalinowski, Antitrust Laws and Trade Regulation §§ 49.01–.02 (1976).

■ The case before us involves an alleged conspiracy to restrain and monopolize a means of paying for professional services. We perceive no material distinction between payment for legal services, as in *Goldfarb,* and payment for health care, as in *American Medical Association* or here—both are commerce. Since this case involves the alleged restraint and monopolization of a commercial aspect of the practice of a profession, as distinguished from such other aspects as the professional qualifications of the practitioner, we hold that the professional status of the physicians affords them no defense.

### V

■ West Virginia Medical Service, Inc., Monongahela Medical-Surgical Service, Inc., and the doctors on their boards appeal from the district court's denial of their motions to dismiss for improper venue. These defendants either transact business or reside in the Northern District of West Virginia.

---

**3.** Congress, of course, was aware of *Parker v. Brown* when it considered the McCarran-Ferguson Act. *See Cantor v. Detroit Edison Co.,* —— U.S. ——, —— n. 4, 96 S.Ct. 3110, 49 L.Ed.2d 1141 (1976) (Blackmun, J., concurring). Mr. Justice Blackmun's observations about express grants of antitrust immunity in such laws as the McCarran-Ferguson Act cast doubt on the rationale, but probably not the result, of *Allstate Insurance Co. v. Lanier,* 361 F.2d 870 (4th Cir. 1966).

**4.** West Virginia Code §§ 33–24–2(d), (e), and –3(b).

This action was brought in the Southern District of West Virginia where the other corporations transact business and the other individual defendants reside.

Although venue in antitrust actions is generally governed by 15 U.S.C. §§ 15, 22—which allow suit in the district where the defendant resides, is found, has an agent, or transacts business—these statutes are not exclusive. *See Adams Dairy Co. v. National Dairy Products Corp.*, 293 F.Supp. 1135, 1140–41 (W.D.Mo.1968). Title 28 U.S.C. § 1392(a) provides that "[a]ny civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts." This statute is applicable to antitrust actions. *See Anderson-Friberg, Inc. v. Justin R. Clary & Son, Inc.*, 98 F.Supp. 75 (S.D.N.Y.1951). Since some of the defendants reside or transact business in the Southern District of West Virginia, venue is proper.

## VI

The district court denied the plaintiffs' motion to maintain the case as a class action. It orally ruled that the class, consisting of 45 chiropractors, was "not so numerous that it could not be identified." The court added that it was not necessary "for a decision in this case to have all members alleged to be of this class represented as a class." In its formal order, it simply recited that the action "does not satisfy the requirements of a class action as set forth in Rule 23(a) and (b) . . . ."

No consistent standard has been developed for establishing numerosity in class actions. *See* 7 Wright & Miller, Federal Practice and Procedures § 1762 (1972). We have held that class certification is within the discretion of the district court and will not be reversed unless abuse is shown. We have also requested district courts to explain the reasons for their rulings so there will be an adequate record for review. *Barnett v. W. T. Grant Co.*, 518 F.2d 543, 546–48 (4th Cir. 1975). The district court, however, did not explain, other than in the most general terms, why the class did not satisfy the requirements of Rule 23. It made no finding whether joinder would be impracticable, and the reasons it gave, although worthy of consideration, are not among the essential criteria set forth in the Rule.

Approving a class as small as 18 in *Cypress v. Newport News General & Nonsectarian Hospital Association*, 375 F.2d 648, 652–54 (4th Cir. 1967), we observed that numbers alone are not controlling, but on the contrary, all the circumstances of the case should be taken into consideration. There are other factors besides the number of chiropractors and knowledge of their identity which should be considered. Class actions are frequently maintained in antitrust cases because of the many questions of law and fact that are common to the members of the class. *See* 7A Wright & Miller, Federal Practice and Procedures § 1781 (1972). Moreover, discovery would be repetitive and unduly expensive if the parties engage in individual suits.

We cannot tell whether the district court gave any consideration to these and other factors which the parties stress. We therefore vacate the order denying the motion to proceed as a class action. On remand, the district court should reconsider the question and explain the reasons for whatever decision it reaches, taking into consideration the criteria set forth in Rule 23.

No. 75–1982 reversed and remanded.

No. 75–1983 affirmed.

No. 75–1984 affirmed.