**Margaret ALONZO, Mario Alonzo, and Robert Dato, all individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**BLUE CROSS OF GREATER PHILADELPHIA, Blue Cross of Western Pennsylvania, Capitol Blue Cross, Blue Cross of Lehigh Valley, Blue Shield of Pennsylvania, and Pennsylvania Psychological Association, Defendants.**

Civ. A. No. 83–5658.

United States District Court,
E.D. Pennsylvania.

May 30, 1984.

Edwin P. Smith, Jerome M. Dubyn, Dubyn & Smith, P.C., Philadelphia, Pa., for plaintiff.

J. Tomlinson Fort, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Christopher K. Walters, Reed, Smith, Shaw & McClay, Jay H. Clavert, Jr., Eric Kraeutler, Wm. J. Thomas, Morgan, Lewis & Bockius, Robert M. Britton, Post & Schell, P.C., Philadelphia, Pa., Rod J. Pera, H. Lee Roussel, William M. Young, Jr., McNees, Wallace & Nurick, William H. Wood, Thomas E. Wood, Keefer, Wood, Allen & Rahal, Ralph Tive, Gregory H. Knight, Tive, Hetrick and Pierce, Harrisburg, Pa., Oldrich Foucek, III, Joseph P. Bubba, Butz, Hudders & Tallman, Allentown, Pa., Paul R. Friedman, Donald N. Bersoff, Ennis, Friedman, Bersoff & Ewing, Washington, D.C., for defendants.

## OPINION

CAHN, District Judge.

This is a class action for treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15,[1] alleging violations of section 1 of the Sherman Act, 15 U.S.C. § 1.[2] Various state law claims are also alleged. I have jurisdiction over this matter pursuant to 28 U.S.C. § 1337(a). Before me are motions by defendants to dismiss the action for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the action will be dismissed.

### I.  *Facts*

The facts, construed most favorably to the plaintiffs, are as follows.[3] Named plaintiffs Margaret Alonzo and Mario Alonzo are joint subscribers to a prepaid health benefits plan administered by two defend-

---

1.  Section 4 of the Clayton Act, 15 U.S.C. § 15, provides as follows:

> Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee....

2.  Section 1 of the Sherman Act, 15 U.S.C. § 1, provides in pertinent part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

3.  In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I am required to accept as true all well-pleaded facts set forth in the complaint. *Rogin v. Bensalem*

ants, Blue Cross of Greater Philadelphia[4] and Pennsylvania Blue Shield.[5] After obtaining treatment from a psychotherapist, Margaret Alonzo submitted claims to these defendants, and was reimbursed by Blue Cross of Greater Philadelphia for a portion of the services rendered by the psychotherapist. Subsequently, Blue Cross determined that Mrs. Alonzo had been reimbursed in error. An amount equal to the erroneous reimbursement was withheld as a set-off against the Alonzos' joint account. As a result, Mario Alonzo, the husband of Margaret Alonzo, was denied payment for medical bills he had incurred.

Margaret Alonzo seeks to represent a class of subscribers to Blue Shield and Blue Cross in Pennsylvania, who have incurred costs for treatment by psychotherapists, but who have been denied reimbursement by the "Blue" defendants. Mario Alonzo seeks to represent a class of subscribers who are entitled to reimbursement under the terms of their subscriber contracts with defendants, but are refused payment because defendants' practice is to claim a set-off against subscriber accounts for monies owed to the "Blues" by subscriber spouses or family members. Named plaintiff Robert Dato is a psychotherapist who is certified by a trade association, the National Association for the Advancement of Psychoanalysis, but is not licensed by the State of Pennsylvania. He seeks to represent a class of nonlicensed psychotherapists who are not now receiving payment from the Blue Cross and Blue Shield plans in Pennsylvania for providing mental health services to health plan subscribers.

Plaintiffs claim that from 1972 to the present, Pennsylvania Blue Shield, the named Blue Cross defendants, and the Pennsylvania Psychological Association, a psychologists' trade association, together with unnamed co-conspirators, agreed and conspired to boycott psychotherapists. The purpose of the alleged boycott was to prevent psychotherapists from receiving compensation from the Blue Cross and Blue Shield defendants for services rendered to Blue Cross and Blue Shield subscribers in Pennsylvania. Plaintiffs allege that as a result of the conspiracy, psychologists, who are licensed by Pennsylvania under 63 Pa. S.A. §§ 1201–1215, have gained an unlawful competitive advantage over psychotherapists, who are not licensed. Further, subscribers to the "Blue" plans in Pennsylvania have been "economically coerced to receive psychological services from psychologists to the exclusion and boycott of psychotherapists." Complaint, ¶ 25, at 11–12. Plaintiffs interpret several Pennsylvania statutes to permit the "Blue" plans to reimburse subscribers for services of psychotherapists, and contend that the refusal of the plans to so reimburse is a "boycott" of psychotherapists and a conspiracy in restraint of trade in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. In addition, plaintiffs assert several pendent state law claims: breach of contract, libel and trespass.

## II. Analysis

### A. The Antitrust Claims

■ Counsel for plaintiffs bases his allegations of anti-trust violations upon the presumption that the state statutory scheme under which the "Blue" plans are permitted to operate allows the plans to offer subscriber contracts that cover the services of nonlicensed psychotherapists. Plaintiffs' counsel has misinterpreted the relevant statutory provisions, however. Pennsylvania law permits only licensed professionals to participate in Blue Cross and Blue Shield health plans, and thus forbids the reimbursement requested by plaintiffs here.[6]

---

Township, 616 F.2d 680, 685 & n. 14 (3d Cir. 1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

**4.** Defendants Blue Cross of Greater Philadelphia, Blue Cross of Western Pennsylvania, Capitol Blue Cross, and Blue Cross of Lehigh Valley, are non-profit hospital plan corporations, authorized under 40 Pa.C.S.A. §§ 6101–6127 to provide "hospitalization and related health benefits" to their subscribers.

**5.** Defendant Blue Shield of Pennsylvania is a non-profit Professional Health Services Plan, authorized under 40 Pa.C.S.A. §§ 6301–6335 to

provide prepaid outpatient health care benefits to subscribers.

**6.** The result reached here turns upon an interpretation of Pennsylvania law. In general, abstention is proper in such cases when the relevant state law issue has not been addressed by the state's courts, see Propper v. Clark, 337 U.S. 472, 489, 69 S.Ct. 1333, 1343, 93 L.Ed. 1480 (1949). Abstention may appropriately be denied, however, where, as here, there is no ambiguity in the state statute. New Motor Vehicle Board v. Orrin W. Fox Co., 439 U.S. 96, 100 n. 3, 99 S.Ct. 403, 407 n. 3, 58 L.Ed.2d 361 (1978).

## 1. *The Statutory Scheme*

The Professional Health Services Plan Act, 40 Pa.C.S.A. §§ 6301–6335, defines the types of prepaid health coverage that Pennsylvania Blue Shield[7] is authorized to offer to subscribers. The Act provides: "A professional health services corporation shall not provide professional health services for its subscribers otherwise than through *health service doctors, duly licensed to practice* in their respective fields under the laws of this Commonwealth." 40 Pa.C.S.A. § 6322(c) [emphasis added]. "Health services doctors" are defined in section 6302(a) of the Act as doctors of medicine and dental surgery, optometrists, osteopaths, podiatrists, chiropractors, and licensed physical therapists. Under sections 6322(c) and 6302(a), Pennsylvania Blue Shield was formerly authorized to provide mental health coverage only through doctors of medicine (*i.e.*, psychiatrists), duly licensed to practice under Pennsylvania law.

In 1978 the Pennsylvania legislature enacted a "Freedom of Choice" law, 40 Pa. S.A. §§ 767–769, known as "Act 16," applicable to insurance contracts generally and also to the health services plans offered by Blue Cross and Blue Shield, see 40 Pa.S.A. § 767(a)(3).[8] Act 16 provides:

> Whenever a policy, contract or certificate provides for reimbursement for any psychologically necessary service *which is within those areas for which the psychologist is licensed* pursuant to the act of March 23, 1972 (P.L. 136 No. 52) referred to as the Psychologists License Act, the insured ... shall be entitled to reimbursement for such service whether the service is performed by a physician or a psychologist operating *within those areas for which he is licensed.*

40 Pa.S.A. § 768 (emphasis added).

One of the effects of Act 16 was to expand the definition of "health service doctor" found in the Professional Health Services Plan Act to include psychologists licensed by the State of Pennsylvania under 63 Pa.S.A. §§ 1201–1215. Under Act 16, Pennsylvania Blue Shield is both authorized, and required, to cover the treatment of a Blue Shield subscriber by a licensed psychologist, if the subscriber's contract covers psychologically necessary services, and the subscriber chooses to patronize a licensed psychologist rather than a psychiatrist for those services. Nothing in the Act effects any other change in the statutory scheme under which Blue Shield operates, by which Blue Shield is permitted to reimburse subscribers for medical services only if performed by statutorily enumerated professionals, all of whom are licensed by the State of Pennsylvania.[9]

The psychotherapists that plaintiff Robert Dato seeks to represent are not licensed

---

**7.** The various Blue Cross defendants, all hospital plan corporations operating under 40 Pa.C. S.A. §§ 6101–6127, are authorized by statute to provide only "hospitalization or related health benefits" to subscribers, 40 Pa.C.S.A. § 6101. Mrs. Alonzo does not allege that in obtaining the services of a psychotherapist, she incurred *hospitalization-related expenses.* The Blue Cross defendants urge this court to dismiss the claims against them on this basis. Plaintiffs have alleged, however, that Blue Cross of Greater Philadelphia is the entity that has administered the Major Medical contract under which they seek reimbursement for psychotherapists' services. The precise relationship between the Blue Cross defendants and Pennsylvania Blue Shield in the provision of joint coverage is an issue of fact beyond the scope of the analysis this court may make in evaluating a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Because of the dismissal of all claims against the defendants on other grounds, I need not consider this issue.

**8.** That section provides:

> (a) This act shall apply to every group or individual policy, contract, or certificate issued thereunder, of health, or sickness, or accident insurance delivered or issued for delivery within the Commonwealth including but not limited to policies, contracts or certificates issued by:
>
> (3) Any professional health services plan corporation as defined in Chapter 63 of Title 40 Pa.C.S.A.

**9.** *See* 63 Pa.S.A. §§ 42.1–42.21a (podiatrists); *id.,* §§ 120–130b (dentists); *id.,* §§ 244.1–244.12 (optometrists); *id.,* §§ 271.1–271.18 (osteopaths); *id.,* §§ 421.1–421.18 (doctors of medicine and surgery); *id.,* §§ 601–624 (chiropractors); *id.,* §§ 1201–1215 (psychologists); *id.,* §§ 1301–1312 (physical therapists).

by the State of Pennsylvania; they are merely accredited by a trade association, the National Association for the Advancement of Psychoanalysis. Thus, under the statutory scheme outlined above, neither Pennsylvania Blue Shield, nor the Blue Cross defendants acting as agent on behalf of Blue Shield, is authorized to pay for the mental health services provided by plaintiff Dato or other psychotherapists.

Counsel for plaintiffs contends that psychotherapists are "exempt from licensure" under the Psychologists Licensing Act, 63 Pa.S.A. §§ 1201–1215. He further argues that the Pennsylvania legislature intended to extend Blue Shield coverage to psychotherapists' services when it enacted the "Freedom of Choice" law, Act 16. The Psychologists Licensing Act provides:

> It shall be unlawful for any person to engage in the practice of psychology or to offer or attempt to do so unless he shall first have obtained a license pursuant to this act, except ... (3) Nothing in this act shall be construed to prevent qualified members of other recognized professions from doing work of a psychological nature consistent with the training and the code of ethics of their respective professions.

63 Pa.S.A. § 1203. This section allows individuals like Robert Dato to offer psychological services without first obtaining a license from the state, as long as he does not hold himself out to the public as a "psychologist". It similarly permits ministers, lawyers, and other professionals to do "work of a psychological nature" without first obtaining a license from the State of Pennsylvania. This type of work, however, does not fall within the Act 16 statutory

definition of service reimbursable by Blue Shield, i.e., "psychologically necessary service which is within those areas for which the psychologist is licensed," 40 Pa.S.A. § 768. Although psychotherapists may be permitted to practice without obtaining a license, they cannot be equated with licensed psychologists for purposes of the Blue Shield statutory scheme, and therefore Blue Shield is not authorized to reimburse subscribers for their services.

### 2. Applicable Legal Standards

■ The state statutory scheme here at issue clearly does not permit reimbursement to nonlicensed professionals. This case is thus different from other recent cases, in which the practices of Blue Shield programs in other states operating contrary to state law were held not immune from antitrust scrutiny. See *Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia*, 624 F.2d 476, 478 (4th Cir.1980) (while Virginia "Freedom of Choice" statute required payments to licensed psychologists, Blue Shield of Virginia and Southwestern Virginia refused to pay for psychologist services unless billed through a physician), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981); *Ballard v. Blue Shield of Southern West Virginia, Inc.*, 543 F.2d 1075, 1079 (4th Cir.1976) (while West Virginia law specifically authorized Blue Shield to insure chiropractic treatment, Blue Shield refused to provide coverage), *cert. denied*, 430 U.S. 922, 97 S.Ct. 1341, 51 L.Ed.2d 601 (1977).[10]

Although plaintiffs may be correct that the challenged practice gives licensed psychologists in Pennsylvania a competitive advantage over nonlicensed psychotherapists, the distinction between licensed and

---

**10.** Counsel for plaintiffs incorrectly contends that this case is on "all fours" with the Supreme Court's opinion in *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). In *McCready*, the challenged practice was Virginia Blue Shield's refusal to reimburse subscribers for the cost of licensed psychologists' services unless billed through a physician, despite the existence of a

Virginia statute requiring reimbursement. 457 U.S. at 468 & n. 2, 102 S.Ct. at 2542 & n. 2. In addition to the dissimilar fact situation, the only issue addressed in *McCready* was whether the plaintiff had standing to maintain an antitrust action against Blue Shield. *Id.* at 467, 102 S.Ct. at 2542. Defendants here do not contest the plaintiffs' standing. The holding of *McCready*

nonlicensed professionals imbedded in the Blue Shield statutory scheme is state action exempt from antitrust scrutiny, *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).[11] The scope of the "state action" exemption has been clarified by the Supreme Court in a recent opinion:

> [W]hen a state legislature adopts legislation, its actions constitute those of the State, [*Parker v. Brown*, 317 U.S.] at 351 [63 S.Ct. at 313], and *ipso facto* are exempt from the operation of the antitrust laws.... When the conduct is that of the sovereign itself ... the danger of unauthorized restraint of trade does not arise. Where the conduct at issue is in fact that of the state legislature, we need not address the issues of "clear articulation" [of state policy] and "active supervision" [by the state].... [W]here the action complained of ... was that of the State itself, the action is exempt from antitrust liability[12] regardless of the State's motive in taking this action.

*Hoover v. Ronwin*, 466 U.S. 558, ——, ——, 104 S.Ct. 1989, 1995, 2001, 80 L.Ed.2d 590 (1984). Here, as in *Hoover*, the action challenged was taken by the state itself, and for that reason is not actionable under the antitrust laws.

### B. *The State Law Claims*

Because the federal antitrust claims will be dismissed, under *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) the court has no subject matter jurisdiction to consider plaintiffs' state law claims of trespass, libel and breach of contract.

For all of the above reasons, this action will be dismissed in its entirety.

thus has no bearing upon the disposition of the present case.

11. The holding that defendants' conduct is exempt from antitrust liability under the "state action" doctrine of *Parker v. Brown* obviates the need to address the contention of some of the defendants that they are immune from liability under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015.

12. Although the Supreme Court's opinion currently reads "exempt from antitrust *immunity*" (emphasis added), the Reporter of Decisions Office at the U.S. Supreme Court will substitute "liability" for "immunity" in future reprints of *Hoover v. Ronwin.*