·Frederick T. BOULWARE, Jr., M.D., Boulware Neurology Consultants, Ltd., Plaintiffs–Appellants.

v.

STATE OF NEVADA, DEPARTMENT OF HUMAN RESOURCES, National Care Services Corporation of Nevada, a Nevada Corporation, d/b/a Sunrise Diagnostic Center, Humana Hospitals, Inc., a corporation, Defendants–Appellees.

No. 90–16737.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 17, 1992.

Decided March 27, 1992.

Lawrence R. Lieberman, Levinson & Lieberman, Beverly Hills, Cal., for plaintiffs-appellants.

David N. Frederick, Lionel, Sawyer & Collins, Las Vegas, Nev., for defendants-appellees.

Before: GOODWIN, FLETCHER and BRUNETTI, Circuit Judges.

GOODWIN, Circuit Judge:

Dr. Frederick Boulware appeals a summary judgment in favor of defendants Humana Hospitals, Inc. ("Humana") and National Care Service Corp. ("NCSC") on Boulware's antitrust and civil rights actions and pendent state law claims. The claims arise out of a Nevada state court action brought by defendants against Boulware for an alleged failure to comply with Nevada Certificate of Need ("CON") regulations governing the acquisition of medical equipment.

## I. BACKGROUND

The predicate acts for Boulware's antitrust suit stem from NCSC's intervention in a Nevada state court suit brought by the Nevada Department of Human Resources (the Department). The Department sought an injunction against Boulware for allegedly failing to comply with Nevada statutory and regulatory provisions pertaining to the acquisition of a Magnetic Resonance Imaging (MRI) unit.

On August 22, 1985, the state district court issued a temporary injunction followed by a permanent injunction on January 27, 1986, prohibiting construction of Boulware's MRI facility until a Certificate of Need was obtained. On appeal, the Nevada Supreme Court ruled unanimously in favor of Boulware and held that his purchase of an MRI unit was not subject to CON approval. The court stated that the "legislature never intended that private physician offices would come under the definition of health facility" under Nev. Rev.Stat. § 439A.015 (1983). *Boulware v. Department of Human Resources*, 103 Nev. 218, 737 P.2d 502, 503 (1987). Boulware had requested attorneys' fees. While this issue was not specifically addressed in the opinion, the court stated that "[w]e have considered the other issues raised in this appeal and find them to be without merit." *Id.*

Driven into bankruptcy by the injunction that stalled his MRI venture, Boulware sought antitrust and other relief in federal court. He sued the Department, NCSC, and Humana. Boulware alleged that the

defendants had violated sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and the Nevada Unfair Trade Practices Act, Nev. Rev.Stat. § 598A.060. Boulware also claimed that the defendants had engaged in malicious prosecution and that they had violated 42 U.S.C. § 1983 by depriving him of his property without due process of law.

Boulware's claims against the Department were dismissed with prejudice on Eleventh Amendment sovereign immunity grounds.[1] After further proceedings, the district court granted Humana and NCSC's motion for summary judgment. The court held that Boulware's Sherman Act claims, state unfair trade practice claim and section 1983 claim were barred by the *Noerr–Pennington* doctrine and that Boulware could not establish the elements of his malicious prosecution claim.

## II. STANDARD OF REVIEW

■ We review de novo a district court's grant of summary judgment. The judgment will be affirmed if, viewing the record in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Norfolk Energy, Inc. v. Hodel*, 898 F.2d 1435, 1439 (9th Cir.1990). Although summary judgment is not favored in antitrust cases, it is proper where the defendant's allegedly anticompetitive conduct is protected by the *Noerr–Pennington* doctrine and the defendant's efforts to influence the courts do not fall within the "sham" exception to *Noerr–Pennington* as a matter of law. *See Coca–Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1257 (9th Cir.1982).

## III. *THE FEDERAL ANTITRUST CLAIMS*

Boulware claims that Humana and NCSC violated section 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring to use the state court suit to delay or prevent Boulware from operating an MRI system in competition with NCSC. Boulware also claims that the defendants violated section 2 of the Sherman Act, 15 U.S.C. § 2, by attempting to monopolize the market for MRI system diagnostic services in southern Nevada.

### A. *Implied Repeal*

■ As a preliminary matter, the defendants urge this court to find that in enacting the National Health Planning and Resource Development Act ("NHPRDA") of 1974, Pub.L. 93–641, 88 Stat. 2226, *codified at* 42 U.S.C. §§ 300k *et seq.* (1982)[2], Congress implied the repeal of the antitrust laws with respect to activities involving the active participation of health care providers in the development of health policy. Even if the unsolicited intervention of a private party in a state enforcement action could be characterized as involvement in policy formation, the defendants' argument is unpersuasive.

We are somewhat surprised that members of the health care profession continue to press tired arguments seeking to avoid the clear competitive mandate of the Sherman Act. The application of antitrust laws to medical markets dates at least as far back as *American Medical Association v. United States*, 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. 434 (1943), where the Supreme Court maintained that the "occupation of the individual physicians charged as defendants is immaterial." *Id.* at 528, 63 S.Ct. at 328. If the Supreme Court's message in *Arizona v. Maricopa County Med. Soc'y*, 457 U.S. 332, 349–51, 102 S.Ct. 2466, 2475–77, 73 L.Ed.2d 48 (1982); *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 25 n. 42, 104 S.Ct. 1551, 1565, n. 42, 80 L.Ed.2d 2 (1984); and *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 463, 106 S.Ct. 2009, 2020, 90 L.Ed.2d 445 (1986), was not clear enough, then its specific announcement in *National Gerimedical Hosp. & Gerontology Ctr. v. Blue Cross*, 452 U.S. 378, 101

---

1. Although the appellants' brief includes the Department in its caption, the Department is not a party to this appeal. Boulware appeals only from the Judgment and Order granting the summary judgment motion of Humana and NCSC.

2. The NHPRDA was repealed in 1986. *See* Pub.L. 99–660, Title VII, § 701(a), 100 Stat. 3799.

S.Ct. 2415, 69 L.Ed.2d 89 (1981), should have been. "We hold, therefore, that the NHPRDA is not so incompatible with antitrust concerns as to create a 'pervasive' repeal of the antitrust laws as applied to every action taken in response to the health-care planning process." *Id.* at 393, 101 S.Ct. at 2424. *See also North Carolina ex rel. Edmisten v. P.I.A. Asheville, Inc.,* 740 F.2d 274, 284–85 (4th Cir.1984), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985). The antitrust laws apply to hospitals in the same manner that they apply to all other sectors of the economy. Health care providers are exposed to the same liability and entitled to the same defenses as businesses in other industries.

### B. *The Section One Claim*

■ Boulware's Sherman Act section 1 claim must be rejected at the outset. Because NCSC is a wholly owned subsidiary of Humana, these two entities cannot form a "combination or conspiracy" for purposes of section 1. *See Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 777, 104 S.Ct. 2731, 2745, 81 L.Ed.2d 628 (1984). In view of the Supreme Court's recent rejection of a "conspiracy" exception to the state action and *Noerr–Pennington* doctrines, any claim that Humana or NCSC conspired with the Department also must fail. *See City of Columbia v. Omni Outdoor Advertising, Inc.,* —— U.S. ——, ——, 111 S.Ct. 1344, 1351, 1355, 113 L.Ed.2d 382 (1991). The only remaining federal antitrust claims are monopolization and attempted monopolization in violation of section 2.

### C. *Noerr–Pennington Immunity*

■ Private efforts to influence governmental bodies or courts, even for anticompetitive purposes, enjoy an exemption from the antitrust laws grounded in the First Amendment right to petition. *See California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510–11, 92 S.Ct. 609, 611–612, 30 L.Ed.2d 642 (1972); *United Mine Workers v. Pennington,* 381 U.S. 657, 669–71, 85 S.Ct. 1585, 1592–94, 14 L.Ed.2d 626 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight,*

*Inc.,* 365 U.S. 127, 137–38, 81 S.Ct. 523, 529–30, 5 L.Ed.2d 464 (1961). The *Noerr–Pennington* doctrine shields lobbying and litigation activity from the reach of the antitrust laws so long as the activity is not a "sham." *Trucking Unlimited,* 404 U.S. at 510–11, 92 S.Ct. at 611–12.

The Supreme Court has recently instructed that the sham exception "encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Omni Outdoor Advertising,* 111 S.Ct. at 1354; *see also Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers,* 542 F.2d 1076, 1084 (9th Cir.1976) (drawing the same distinction), *cert. denied,* 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977). We have defined as a sham litigation "undertaken solely to interfere with free competition and without the legitimate expectation that such efforts will in fact induce lawful government action." *Omni Resource Dev. Corp. v. Conoco, Inc.,* 739 F.2d 1412, 1413 (9th Cir. 1984). As this formulation indicates, courts frequently have approached sham claims by attempting to assess the objective legal merit of the predicate suit. A finding that the predicate action was baseless would thus be sufficient to establish that the primary motivation behind the litigation was to inflict anticompetitive injury through the judicial process because the expected value of the legal outcome of a meritless suit is zero.

■ Although the usual example given for sham litigation is a pattern of baseless and repetitive claims, *see, e.g., Otter Tail Power Co. v. United States,* 410 U.S. 366, 380, 93 S.Ct. 1022, 1031, 35 L.Ed.2d 359 (1973), the sham exception may be implicated where only one suit is involved. *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1254–57 (9th Cir.1982), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). When the antitrust plaintiff challenges a single suit rather than a pattern, we have held that "a finding of sham requires not

only that the suit is baseless, but also that it has other characteristics of grave abuse, such as being coupled with actions or effects external to the suit that are themselves anti-competitive." *Omni Resource,* 739 F.2d at 1414.

■ Defendants read this statement to require a showing of both baselessness and external actions or effects.[3] The language of *Omni Resource,* however, requires only baselessness plus "characteristics of grave abuse" and does not provide an exhaustive list of what may serve as indicia of such abuse. A single suit may be a sham where the suit is baseless and there is some independent ground to corroborate the inference that the plaintiff lacked a genuine intent to influence judicial action.[4]

■ Next we consider the implications of the defendants' initial success on the merits. The fact that NCSC succeeded in obtaining an injunction from the Nevada trial court judge strongly suggests that the state court action was not baseless. Our decisions instruct that success on the merits, while not dispositive, is an important factor to be considered under the sham inquiry. *See Aydin Corp. v. Loral Corp.,* 718 F.2d 897, 903 (9th Cir.1983) (observing that success or failure "might be helpful as one indication" of intent); *Ernest W. Hahn, Inc. v. Codding,* 615 F.2d 830, 841 n. 13 (9th Cir.1980) (noting that "success before the political or adjudicative body . . . is a factor [to be] considered" but is not the "sole criterion"); *Franchise Realty,* 542 F.2d at 1079 (finding it "particularly hard" to characterize as baseless the defendant's successful opposition to the granting of building permits); *see also In re Burling-*

*ton Northern, Inc.,* 822 F.2d 518, 527–28 (5th Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); *Potters Med. Ctr. v. City Hosp. Ass'n,* 800 F.2d 568, 578–79 (6th Cir.1986). *But cf. Coca–Cola Co. v. Overland,* 692 F.2d 1250, 1257 n. 17 (9th Cir.1982) (reserving the issue but questioning in dicta the proposition that a meritorious suit could ever be a sham).

■ Relying on *Omni Resource Development Corp., supra,* defendants urge us to hold that their initial success in the Nevada trial court is determinative of the question whether their state court suit was baseless. We decline to embrace such a per se approach. In *Omni Resource,* the antitrust defendant had obtained a preliminary injunction in a state court trespass action seeking to prevent Omni from mining certain lands. We stated that the trespass suit, under attack in federal court as a sham, "can not be characterized as baseless at all; for although we do know the outcome, at least to the point of a preliminary injunction the state court plaintiffs were successful." 739 F.2d at 1414. We also found that "the state court suit did not in itself cause an anticompetitive effect. Omni was injured by the finding against it and by the injunction, not by the mere filing of the suit." *Id.* Finally, we noted that there were no anticompetitive acts or effects external to the litigation. *Id.* Given the court's reliance on all of these factors, *Omni Resource* cannot be read to stand for the proposition that initial success on the merits by itself precludes a finding that a suit was a sham.

**3.** This interpretation is arguably supported by dicta in *Rickards v. Canine Eye Registration Found.,* 783 F.2d 1329 (9th Cir.), *cert. denied,* 479 U.S. 851, 107 S.Ct. 180, 93 L.Ed.2d 115 (1986). The *Rickards* court read *Omni Resource* to hold that a "single suit may constitute [an] antitrust violation when coupled with anticompetitive conduct external to the suit." *Id.* at 1333–34. The court, however, was not called upon to decide whether any other factors besides collateral anti-competitive activity might constitute "characteristics of grave abuse" or prove "sufficient corroboration" of a lack of genuine intent to influence judicial action. *Id.*

**4.** The conclusion that the sham exception may apply to a single lawsuit in the absence of external actions or effects is supported by the Supreme Court's discussion of sham doctrine in *Trucking Unlimited.* The Court mentioned "[u]se of a patent obtained by fraud to exclude a competitor" and "bribery of a public purchasing agent" as examples of conduct that would fall within the sham exception despite the fact that only single instances of conduct were involved and no external activities were present. *See* 404 U.S. at 512–13, 92 S.Ct. at 612–13.

Similarly, we reject the plaintiff's contention that the subsequent reversal of the injunction by the Nevada Supreme Court proves that the suit was without foundation. Both the initial success on the merits and the subsequent reversal are relevant to the inquiry but neither factor is determinative. The court hearing the antitrust claim must make its own assessment of the objective merits of the predicate suit and decide whether it was intended to inflict anticompetitive injury through the legal process or by virtue of the legal outcome.

The district court relied on the Nevada Supreme Court's denial of Boulware's request for attorneys' fees in holding that the state court action was not baseless. In particular, the court relied on comments by the Nevada justices at oral argument to the effect that the suit was not frivolous and needed to be litigated. Under Nevada law, a court "may make an allowance of attorney's fees" to a prevailing party when the court finds that a claim was brought "without reasonable basis or to harass the prevailing party." Nev.Rev.Stat. § 18.010(2)(b). The Nevada Supreme Court did not address this issue directly, but rather disposed of Boulware's request for attorneys' fees with the statement "[w]e have considered the other issues raised in this appeal and find them to be without merit." *Boulware*, 737 P.2d at 503.

The Court's brusque disposition of all "other issues raised in this appeal" does not provide any indication of its evaluation of the basis for the suit. More important, as the statutory language indicates, the award of attorneys' fees in Nevada is discretionary with the court. Because the Nevada Supreme Court was not required to determine whether the state court action was maintained without reasonable basis, we cannot rely on its denial of attorneys' fees in our analysis of the *Noerr–Pennington* issues.

With the above factors in mind, we must make an independent assessment of the merits and purpose of the underlying claim. We find that the defendants' position that a physician's office with an MRI unit is a "health facility" subject to CON review is not implausible or without legal foundation. The "physician's office exception" to the state CON regulations was not codified until after the state court action commenced. Before the June 3, 1985, amendment, Nev.Rev.Stat. § 439A.015 made no reference to the physician's office exception.[5] Even if the exception was widely recognized and known to Humana and NCSC, it was not implausible to argue that Boulware's private office would become something more than a physician's office once a $1,500,000 piece of experimental equipment was installed in an adjacent, specially designed building and was made available, as Boulware intended, to other doctors and their patients.

While it is true that Boulware's proposed MRI facility did not fall within the ten categories of facilities listed in section 439A.015 to which the CON procedures applied, the law was by no means clear that those ten examples constituted an exclusive list. Indeed, while Boulware's case was pending, the Nevada Supreme Court held that "the failure to specifically enumerate [a mobile MRI] facility in NRS 439A.015 (1983) does not prevent its inclusion as a

---

5. The statutory scheme in effect prior to June 3, 1985, required CON approval for

[t]he proposed acquisition of any medical equipment that would cost more than $400,000, or such an amount as the department may specify by regulation, and which would be owned by or located at a health facility.

Nev.Rev.Stat. § 439A.100(2)(d) (1983). A "health facility" was defined as

a facility in which health services are provided. The term includes a:
  1. Facility for rehabilitation of inpatients;
  2. Facility for treatment of end-stage renal disease;
  3. Freestanding unit for hemodialysis;
  4. Home health agency;
  5. Hospital;
  6. Institution for treatment of tuberculosis;
  7. Intermediate care facility;
  8. Psychiatric hospital;
  9. Skilled nursing facility; or
  10. Surgical center for ambulatory patients.

Nev.Rev.Stat. § 439A.015 (1983).

health facility." *Department of Human Resources v. UHS of the Colony,* 103 Nev. 208, 211, 735 P.2d 319, 321 (1987).

The 1985 Nevada State Health Plan concluded that the introduction of MRI units in Nevada should be discouraged because the technology was still in its infancy, but it noted that "controlling the diffusion of MRI technology in Nevada will be difficult due to the current statutory exemption from CON review for the acquisition of major medical equipment not 'owned by or located in a health facility.'" There is evidence in the record that the Department sought to remedy this problem by developing administrative criteria that denied the availability of the physician's office exception to doctors seeking to acquire MRI units, even though the Department previously had allowed private physicians to acquire CT scanners without CON approval.

The defendants' basis for the state court action was not so implausible as to support an inference that it undertook the proceeding to inflict anticompetitive injury through the use of the legal process. In addition, there is no other evidence that the defendants used the litigation process, rather than its outcome, to injure Boulware.

As the Supreme Court's discussion in *Omni Outdoor Advertising* makes clear, litigation falls within the sham exception to *Noerr–Pennington* when there is evidence that the antitrust defendant used the legal process itself, rather than the result of the process, to inflict anticompetitive injury. *See* 111 S.Ct. at 1354. There is no evidence that NCSC sought to keep Boulware from competing in the MRI market by the mere maintenance of the state court action. On the facts of this case, NCSC had little or nothing to gain from losing. Few benefits could have been derived from an unsuccessful suit, and there is no reason to believe that NCSC participated in the case regardless of the outcome or without a legitimate expectation of success on the merits. This is not a case where the antitrust defendant could have used the lawsuit as a tool to impose costs and delay, to tarnish the reputation of a competitor, or to cripple its adversary's ability to obtain

needed financing. Only by obtaining an injunction could NCSC have hoped to keep Boulware out of the market for a significant period of time. Supporting this conclusion is the fact that the suit was prosecuted expeditiously: only one month elapsed from the time NCSC intervened on July 23, 1985, until the plaintiffs obtained a preliminary injunction on August 22, 1985. The permanent injunction issued five months later on January 27, 1986.

NCSC's intervention in the state suit may be characterized as a monopolist's attempt to prevent competition by aiding a state agency to push the boundaries of its jurisdiction by taking an aggressive legal position in enforcement proceedings. Given the nature of the defendants' legal argument and the manner in which it proceeded, the fact that NCSC took an active part in trying to shape the law in a manner that would protect its alleged MRI monopoly does not place it beyond *Noerr–Pennington's* protection. Boulware's success on appeal does not alter this conclusion. The defendants' actions are immune from antitrust liability.

## IV. *OTHER CLAIMS*

■ Boulware also seeks to recover under 42 U.S.C. § 1983, alleging that defendants, acting under color of Nevada law, deprived Boulware of property without due process of law in violation of the Fourteenth Amendment. In *Evers v. County of Custer,* 745 F.2d 1196 (9th Cir.1984), we held that the First Amendment rationale of the *Noerr–Pennington* doctrine extends beyond antitrust suits to civil rights actions as well. Thus, activity protected by *Noerr–Pennington* cannot form the basis of section 1983 liability. *Id.* at 1204.

■ Boulware also alleges that the defendants violated the Nevada Unfair Trade Practices Act, Nev.Rev.Stat. § 598A.060, which tracks the provisions of the Sherman Act. The Nevada statute also adopts by reference the case law applicable to the federal antitrust laws:

The provisions of this chapter shall be construed in harmony with prevailing ju-

dicial interpretations of the federal anti-trust statutes.

Nev.Rev.Stat. § 598A.050. The district court correctly held that Boulware's state unfair trade practices claim is barred by *Noerr–Pennington* immunity.[6]

▮▮▮▮▮ Finally, Boulware claims that NCSC and Humana engaged in malicious prosecution by intervening in the Nevada state court action without probable cause and with the intent of injuring Boulware in his business and preventing him from competing with NCSC. Under Nevada law, the tort of malicious prosecution requires a prima facie showing that the defendant participated in a lawsuit against the plaintiff that was brought with malice and without probable cause. *See Catrone v. 105 Casino Corp.,* 82 Nev. 166, 168, 414 P.2d 106, 107–08 (1966). The district court ruled that, as a matter of law, the state court action "had at least arguable merit" and that Boulware therefore could not prove the element of lack of probable cause. The arguments relating to the absence of probable cause in a claim for malicious prosecution are closely related to those attempting to establish baselessness under the *Noerr–Pennington* sham inquiry. As discussed above, the state court action was not baseless. The district court was correct in dismissing Boulware's malicious prosecution claim.

## V. CONCLUSION

The judgment is AFFIRMED; defendants' motion for sanctions and attorneys' fees on appeal is DENIED.

---

**6.** Given our ruling on *Noerr–Pennington,* it is unnecessary to address defendants' contention that Boulware's antitrust and state unfair trade practice claims are barred by res judicata and collateral estoppel because he raised similar arguments as affirmative defenses in the state court action.