227 F.3d 1090 (9th Cir. 2000)
 MANISTEE TOWN CENTER, an Arizona Limited Liability Company, Plaintiff-Appellant,
v.
CITY OF GLENDALE, a municipal corporation; ELAINE SCRUGGS, in her official and individual capacity (wife); LAWRENCE SCRUGGS, husband; DAVID GOULET, in his individual and official capacity (husband); MARY GOULET, wife, aka: Jane Doe Goulet; TOM EGGLESTON, in his official and individual capacity; JANE DOE EGGLESTON, wife; MARTY VANACOUR, in his individual and official capacity (husband); JANE DOE VANACOUR, wife, Defendants-Appellees.
 No. 99-16328
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted July 12, 2000
Filed September 11, 2000
 
 Dennis I. Wilenchik, Wilenchik & Bartness, P.C., Phoenix, Arizona, for the plaintiff-appellant.
 Andrew M. Federhar, Fennemore Craig, P.C., Phoenix, Ari-zona, for the defendants-appellees.
 Appeal from the United States District Court for the District of Arizona. Paul G. Rosenblatt, District Judge, Presiding. D.C. No.CV-99-00153-PGR
 Before: William C. Canby, Jr., Stephen Reinhardt, and Ferdinand F. Fernandez, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 This appeal arises from a dispute between the owner of a shopping center and the local city government over the most appropriate uses to be made of the center. Manistee Town Center, the owner of a shopping center in Glendale, Arizona, appeals from the district court's dismissal of Manistee's federal claims against the City of Glendale and four of its officials. Manistee brought this action after the City and several of its officials lobbied Maricopa County, Arizona, not to lease space from Manistee for a county justice center. After negotiations between the County and Manistee fell apart, Manistee sued, alleging that the defendants' lobbying of the County had deprived Manistee of its property (potential lease contracts) without due process of law in violation of 42 U.S.C.S 1983. Manistee further claimed that the defendants had conspired to deny Manistee equal protection of the law in violation of 42 U.S.C. 1985. The district court dismissed both of Manistee's claims pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that the defendants' activities were immunized under the Noerr-Pennington doctrine. See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); United Mine Workers of Am. v. Pennington , 381 U.S. 657 (1965). We affirm the dismissal of Manistee'sS 1983 claim on the ground of Noerr-Pennington immunity. We affirm the dismissal of Manistee's 1985 claim on the ground that Manistee failed to plead a racial or class-based discriminatory animus. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993).
 
 FACTUAL BACKGROUND
 
 2
 Manistee alleges the following facts, which we assume to be true for purposes of Manistee's appeal from the district court's dismissal for failure to state a claim. See Boone v. Redevelopment Agency of San Jose, 841 F.2d 886, 891 (9th Cir. 1988). In 1996, plaintiff Manistee Town Center ("Manistee") purchased and renovated a run-down shopping mall in Glendale, Arizona. (The mall is now known as Manistee Town Center). Manistee was unsuccessful in attracting a major retail anchor tenant to the mall, however, and began to explore alternative lease arrangements in an effort to make the mall a more attractive property for resale.
 
 
 3
 Defendants, the City of Glendale, and four officials including the Mayor, City Manager and two of its City Councilmembers, wanted Manistee to be a "power center. " They strongly preferred that Manistee lease to a large commercial retailer.
 
 
 4
 Defendants actively opposed Manistee's efforts to lease space at its mall to two potential lessors: (1) Maricopa County, which was considering leasing space to locate its justice center; and (2) a charter school. As part of their effort to oppose the lease to Maricopa County, defendants wrote letters to residents near the mall urging them to oppose noncommercial uses of the mall and to make that opposition known to the County and to Manistee. Defendants also encouraged the local press to print articles on proposed uses of the mall, and lobbied government officials at the County. As part of their effort to oppose the lease to the charter school, defendants wrote letters to residents near the mall and tenants at the mall encouraging them to express to Manistee their opposition to the lease to the charter school. Soon thereafter, Manistee's negotiations to lease space to the County fell apart, even though County officials "verbally and through correspondence expressed their commitment to leasing[the] space at the Mall and the parties [had begun] the process of documenting the lease arrangement."[1]
 
 
 5
 Manistee subsequently filed a complaint in state court. In addition to its claims under 42 U.S.C. 1983 and 1985, Manistee brought state law claims for tortious interference with contract, tortious interference with business relationships, and violation of Arizona's Open Meeting law. Defendants removed the case to federal district court. See 28 U.S.C. 1441(a). The district court dismissed all of Manistee's federal claims, and remanded Manistee's state law claims to state court. See 28 U.S.C. 1441(c). Manistee appeals the dismissal of its federal claims.
 
 MANISTEE'S 1983 CLAIM
 
 6
 We first address the question whether lobbying and public relations efforts by the City of Glendale and its officials can give rise to a cause of action by Manistee for deprivation of a federal right under 42 U.S.C. 1983. We conclude that they cannot.[2]
 
 
 7
 The district court dismissed Manistee's 1983 claim on the ground that the defendants' activities were covered by NoerrPennington immunity, and that defendants' activities did not fall within the "sham" exception to that doctrine. We affirm both holdings.
 
 A. Noerr-Pennington
 
 8
 Under the Noerr-Pennington doctrine,"[t]hose who petition government for redress are generally immune from antitrust liability." Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 56 (1993). The doctrine immunizes petitions directed at any branch of gov-ernment, including the executive, legislative, judicial and administrative agencies. California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972). A publicity campaign directed at the general public and seeking government action is covered by Noerr-Pennington immunity. Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 499-500 (1988). The immunity is no longer limited to the antitrust context; we have held that Noerr-Pennington immunity applies to claims under 42 U.S.C. 1983 that are based on the petitioning of public authorities. See Boulware v. Nevada Dep't of Human Resources, 960 F.2d 793, 800 (9th Cir. 1992); Evers v. County of Custer, 745 F.2d 1196, 1204 (9th Cir. 1984).
 
 
 9
 In the present case, defendants' lobbying was directed at two distinct ends -opposing Manistee's lease to a charter school and opposing Manistee's lease to the County for a justice center. Manistee alleged facts relevant to both campaigns, but sought relief only with regard to defendants' opposition to the County lease. Our inquiry is limited therefore to whether defendants' lobbying and public relations efforts in opposing Manistee's proposed lease to the County was immune from suit under the Noerr-Pennington doctrine.
 
 
 10
 The district court concluded that Noerr-Pennington immunity applied to the City of Glendale and its defendantemployees acting in their official capacities.[3] Manistee's appeal thus presents us with a question of first impression in this circuit: does Noerr-Pennington apply to petitioning by government actors, here a municipality and its officials?
 
 
 11
 If defendants were private citizens, the applicability of the Noerr-Pennington doctrine would be clear. In Noerr, the Supreme Court held that the Sherman Act is not violated by the association of two or more persons formed for the purpose of petitioning the government. See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 13637 (1961). The Court emphasized that it does not matter whether petitioners intend to bring about an advantage to themselves or a disadvantage to their competitors:"The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so." Id. at 139.
 
 
 12
 Manistee asserts, however, that Noerr-Pennington cannot apply to defendants' lobbying because the defendants are not private citizens but a government entity and government officials acting in their official capacities. We find no such limitation in our cases applying the immunity doctrine, and Manistee points to none. Nor do we interpret 1983 to subject government entities or officials to liability for activitythat is protected by Noerr-Pennington immunity. See Boulware, 960 F.2d at 800.
 
 
 13
 In fact, the principle that led the Supreme Court to adopt the immunity principle in Noerr is equally applicable to the petitioning by the Glendale city officials:
 
 
 14
 In a representative democracy such as this, [the leg islative and executive] branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives. To hold that the government retains the power to act in this representative capac ity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would impute to the Sherman Act a purpose to regu late, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act.
 
 
 15
 Noerr, 365 U.S. at 137. Application of Noerr-Pennington to the City of Glendale and its officials is consistent with this "representative democracy" rationale for the immunity doctrine. Government officials are frequently called upon to be ombudsmen for their constituents. In this capacity, they intercede, lobby, and generate publicity to advance their constituents' goals, both expressed and perceived. This kind of petitioning may be nearly as vital to the functioning of a modern representative democracy as petitioning that originates with private citizens. We decline to interpret 1983 as regulating this quintessentially "political activity. " See id. The petitioning or lobbying of another governmental entity is insufficient to "subject" or "cause to be subjected" a person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C.S 1983.
 
 
 16
 Manistee urges that petitioning by government officials should be excluded from Noerr-Pennington immunity because government officials wield power that private petitioners do not. This argument is unpersuasive as applied to mere petitioning. We have long recognized that elected officials have political checks on their actions that private petitioners do not face. See Parker v. Brown, 317 U.S. 341, 352 (1943); Sessions Tank Liners, Inc. v. Joor Mfg., Inc., 17 F.3d 295, 300 (9th Cir. 1994) ("Unlike private actors acting in combination, disinterested governmental decision-makers who take measures to inhibit competition are accountable politically and procedurally to those affected by the anticompetitive measures.").
 
 
 17
 The sparse amount of existing precedent supports our conclusion that Noerr-Pennington immunity applies to the defendants' petitions to the County. See Miracle Mile Assocs. v. City of Rochester, 617 F.2d 18, 20 (2d Cir. 1980) (City of Rochester's petitions to state and federal agencies opposingexpansion of regional shopping center immunized under Noerr-Pennington); Fischer Sand & Aggregate Co. v. City of Lakeville, 874 F. Supp. 957, 959-60 (D. Minn. 1994) (petitions by City of Lakeville officials to state and local agencies opposing opening of gravel mine in neighboring city immunized under Noerr-Pennington); County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1387, 1390 (E.D.N.Y. 1989) (County of Suffolk's petitions to United States Nuclear Regulatory Commission opposing opening of Shoreham nuclear power plant immunized under Noerr-Pennington), aff'd, 907 F.2d 1295 (2d Cir. 1990). Manistee's citations to the contrary are not on point.
 
 B. "Sham" exception
 
 18
 We reject Manistee's contention that defendants' petitioning is not immunized because it falls within the "sham" exception to the Noerr-Pennington doctrine. The concept of the "sham" exception is simple: "There may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified." Noerr, 365 U.S. at 144; see City of Columbia v. Omni Outdoor Adver., Inc., 499 U.S. 365, 379 (1991).
 
 
 19
 The sham exception is more easily applied to litigation, however, than it is to lobbying before executive or legislative bodies. The district court applied the two-part definition of the "sham" exception set out by the Supreme Court for petitioning that takes the form of litigation. See Professional Real Estate Investors, 508 U.S. at 60-61. Under this test, the "sham" exception applies only if the (1) the petitioner's lawsuit is "objectively baseless" and (2) the baseless lawsuit conceals a subjective " `attempt to interfere directly with the business relationships of a competitor.' " Id. (quoting Noerr, 365 U.S. at 144). We decline to apply the Professional Real Estate Investors standard here.
 
 
 20
 [F]or purposes of the sham exception, executive enti ties are treated like judicial entities only to the extent that their actions are guided by enforceable standards subject to review. Only when administrative officials must follow rules is it meaningful to ask whether a petition before an agency was "objectively baseless," or whether there has been a pattern of petitioning without regard to the "merit" of the petitions.
 
 
 21
 Kottle v. Northwest Kidney Ctrs., 146 F.3d 1056, 1062 (9th Cir. 1998), cert. denied, 525 U.S. 1140 (1999). The same limitations apply in Manistee's case. Defendants petitionedcounty officials not to enter a lease, and attempted to energize members of the public to do the same. There are no enforceable standards by which either of the two prongs of the Professional Real Estate test can be applied. The exception simply does not fit.
 
 
 22
 Even if we were to attempt to apply the sham exception here as it relates to litigation, we would conclude that defendants' petitioning was no "sham." In the antitrust context, petitioning may be considered a "sham" only where the petitioner uses "the governmental process -as opposed to the outcome of that process -as an anticompetitive weapon." Omni, 499 U.S. at 380. This abuse of the governmental process must " `directly' " have an anticompetitive effect. Id. at 381 (quoting Noerr, 365 U.S. at 144). Thus, in Omni, a billboard company's successful lobbying of the City of Columbia to enact a zoning ordinance that hampered its competitor's ability to compete did not fall within the "sham " exception because it was not the process of lobbying, but the result of the effort, that interfered with its competitor's business. Similarly, in Amarel v. Connell, 102 F.3d 1494, 1520 (9th Cir. 1997), we summarily rejected a claim that a rice grower's lobbying of the State Department and members of Congress fell within the "sham" exception to Noerr-Pennington immunity. In Boone v. Redevelopment Agency of San Jose, 841 F.2d 886 (9th Cir. 1988), a developer's lobbying of the city for favorable amendments to a redevelopment plan did not fall within the "sham" exception: "The developers have neither alleged the existence of a publicity campaign nor that [the defendant developer] was not genuinely seeking official action from the city and agency. Such allegations are necessary to state a claim under this exception." Id. at 895.
 
 
 23
 Here, Manistee contends that defendants orchestrated a publicity and lobbying campaign to convince the County not to lease space at Manistee. The harm to Manistee, the failure to lease space, was caused by the "outcome of the process," not any abuse of the publicity/lobbying process by defendants. Indeed, Manistee's complaint makes it quite clear that this outcome was the goal of defendants' efforts. Manistee accordingly has failed to allege direct injury from the process, rather than the outcome, as required by Noerr and Omni.[4]
 
 
 24
 Manistee relies on Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240 (9th Cir. 1982), but that case is easily distinguished. "Clipper, for the purposes of the summary judgment motion, has sufficiently shown that defendants' protests were spurious, baseless, and prosecuted without regard to their merit, intended only to delay competitive action, not to influence governmental action. " Id. at 1253. No comparable conduct has been alleged by Manistee.
 
 
 25
 For the reasons stated above, we conclude that the facts alleged by Manistee do not place defendants' actions within the "sham" exception to Noerr-Pennington immunity. The immunity thus applies. We accordingly affirm the district court's dismissal of Manistee's 1983 claim. MANISTEE'S 1985 CLAIM
 
 
 26
 Although the district court dismissed Manistee's claim under 42 U.S.C. 1985(3) on the ground of Noerr-Pennington immunity, it also dismissed the claim on the alternative ground that Manistee had failed to allege that " `some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action.' " Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993) (quoting Griffin v. Breckinridge, 403 U.S. 88, 102 (1971)). We affirm on this latter ground. A cause of action under the first clause of 1985(3) cannot survive a motion to dismiss absent an allegation of class-based animus. See Bretz v. Kelman, 773 F.2d 1026, 1028 (9th Cir. 1985) (en banc).[5]
 
 CONCLUSION
 
 27
 The district court properly dismissed Manistee's claims under 42 U.S.C. 1983 and 1985. Noerr-Pennington immunity defeats Manistee's 1983 claim, and Manistee failed to allege class-based animus as part of its 1985 claim. The judgment of the district court is
 
 
 28
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Manistee's counsel represented at oral argument that Manistee successfully leased space at the mall to the charter school.
 
 
 [2]
 We review de novo the district court's dismissal on the ground of Noerr-Pennington immunity. Oregon Natural Resources Council v. Mohla, 944 F.2d 531, 533 (9th Cir. 1991).
 
 
 [3]
 The original complaint alleged claims against the council members in their individual capacities as well, but by stipulation those allegations were dismissed and the suit continued against the individual defendants in their official capacities only.
 
 
 [4]
 Manistee has generally alleged secret meetings and certain other activities on the part of defendants, but the allegations are insufficient to avoid Noerr-Pennington immunity, or to bring defendants' actions within the sham exception. See Boone, 841 F.2d at 894.
 
 
 [5]
 The district court denied leave to amend the complaint further, noting that Manistee had amended once with notice of the deficiency in its 1985(3) claim, and that it was a limited liability company unlikely to be able properly to allege class-based animus. On appeal, Manistee has not challenged the denial of leave to amend.