**WESTLANDS WATER DISTRICT DISTRIBUTION DISTRICT, Plaintiff,**

v.

**NATURAL RESOURCES DEFENSE COUNCIL, INC., Defendant.**

**No. CIV.S–03–939 LKK/GGH.**

United States District Court, E.D. California.

July 9, 2003.

---

Kronick, Moskovitz, Tiedemann & Girard, Joh D. Rubin, Madeline E. Doms, Sacramento, CA, for Plaintiff Westlands Water District, Distribution District No. 1.

Hamilton Candee, Michael E. Wall, San Francisco, CA, for Defendant Natural Resources Defense Council.

Bill Lockyer, Rick Frank, Theodora Berger, Harrison Pollak, Oakland, CA, for Amicus Curiae Attorney General of the State of California.

## ORDER

KARLTON, Senior District Judge.

This matter comes before the court on defendant's motion to dismiss the complaint. I decide the motion based on the papers and pleadings filed herein and after oral argument.[1]

---

1. In addition to briefing by the parties, the California Attorney General has filed an *ami-cus curiae* brief in support of defendant's motion.

## I.

### THE COMPLAINT

Westlands Water District, Distribution District Number 1 ("Westlands") brings this action against the Natural Resources Defense Council ("NRDC"), seeking a declaratory judgment that certain terms in Westlands' proposed long-term water service contract with the United States do not run afoul of federal law. In addition to declaratory relief, Westlands also seeks costs, expenses, attorney's fees, and "such other and further relief as the Court deems just and proper." Complaint at 9.

Westlands is a water distribution district formed pursuant to California Water Code § 36460, for the purpose of contracting with the United States for water service from the Central Valley Project.[2] Complaint for Declaratory Relief at 4 ¶ 4. The United States and Westlands negotiated certain terms for inclusion in a long-term renewal contract between 1998 and 2000, and "tentatively agreed to several terms" on or before November 17, 2000. *Id.* at 4 ¶ 19, 20. On that same date, the United States released several proposed long-term water service contracts, including the Westlands contract, for public comment. *Id.* at 6 ¶ 24. The comment period closed on or about January 17, 2001. *Id.* at 6 ¶ 26.

On January 9, 2001, before the close of the comment period, the NRDC sent a letter to the Deputy Secretary of the Department of the Interior and other federal officials providing the organization's "Comments on Proposed CVP Long–Term Renewal Contracts for Friant, Hidden, Buchanan, Cross–Valley, Feather River and Delta–Mendota Canal Units." *Id.* at Exhibit C. In the letter, NRDC expressed its view that "the proposed renewal contracts

are a threat to California's environment and constitute misguided federal policy." *Id.* The bulk of the letter consisted of a detailed discussion of NRDC's contention that the proposed contract terms contained "numerous legal deficiencies," including violations of provisions of the Central Valley Project Improvement Act (CVPIA). *Id.* The letter stated that, "[a]bsent action to correct these deficiencies," NRDC would resort to litigation, and "urge[d] the Administration to withdraw these flawed proposed contracts and draft environmental documents, to complete proper EISs and ESA consultations, and to reinitiate negotiations on new contracts that comply with law." *Id.*

Westlands' proposed contract has not yet been finalized or executed and is currently pending review pursuant to the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4332, *et seq.*, and the Endangered Species Act (ESA), 16 U.S.C. §§ 1531, *et seq.* The Complaint states that "[t]he respective agencies responsible for compliance with the ESA are expected to complete their review within six (6) to ten (10) months." *Id.* at 8, ¶ 38.

This action was filed in the Fresno Division of the Eastern District of California on April 18, 2003 and was originally assigned to Judge Coyle. On April 22, 2003, Judge Wanger reassigned the case to his docket, relating the case to two earlier-filed water cases. On May 8, 2003, the undersigned related the case to *NRDC v. Rogers*, 88–1658 LKK/GGH, because *Rogers* involves the application of the same CVPIA provisions with respect to which Westlands seeks a declaratory judgment to nearly identical long-term water contracts.

---

**2.** The Central Valley Project is a reclamation project operated by the United States Department of the Interior, Bureau of Reclamation.

Complaint at 1 ¶ 2. Westlands currently receives water from the CVP pursuant to an interim renewal contract. Complaint at 1 ¶ 5.

## II.

## STANDARDS

### A. STANDARDS UNDER FED. R. CIV. P. 12(B)(6)

On a motion to dismiss for failure to state a claim, the allegations of the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks International Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *Id. See also Wheeldin v. Wheeler,* 373 U.S. 647, 648, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint).

In general, the complaint is construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). So construed, the court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors v. California State Council,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

### B. STANDARDS UNDER FED. R. CIV. P. 12(B)(1)

■ It is well established that the party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists. *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936); *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir.1986). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the standards that must be applied vary according to the nature of the jurisdictional challenge.

■ If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made. The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *See* 2A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* para. 12.07[2.–1], at 12–46 to 12–47 (2d ed.1987). *See also Eaton v. Dorchester Development, Inc.,* 692 F.2d 727, 731 (11th Cir.1982); *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). A complaint will be dismissed for lack of subject matter jurisdiction (1) if the cause does not "arise under" any federal law or the United States Constitution, (2) if there is no case or controversy within the meaning of that constitutional term, or (3) if the cause is not one described by any jurisdictional statute. *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

## III.

## JUSTICIABILITY

It is undisputed that the two parties to this case have differing views of the law. NRDC, in a public comment letter to the Department of the Interior, announced its opinion that terms in the proposed long-term water contracts would not only be harmful to the environment, but that they would be in contravention of federal law.[3] Westlands holds the opposite view and brings this lawsuit in the hopes of obtaining a declaration that its interpretation of federal law is correct. Short of this real difference of opinion as to the law, however, this case does not present a live, justiciable controversy. The contracts in question have yet to be finalized or executed. As NRDC ably points out, the proposed contract terms at issue are subject to change for a variety of reasons, including the government's response to public comment, pending environmental review, or intervening changes in administration policy. *See Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 350, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989) (explaining that NEPA review is "almost certain to affect the agency's substantive decision."). While Westlands attempts to ground standing in the potential harm caused by threatened litigation by NRDC, such litigation is not a certainty and, in any event, depends on the same contingencies as the contract terms; if the terms of the contracts change, so would any future lawsuit. The posture of this case thus renders it unfit for judicial resolution at this time.

## A. PROHIBITION ON ADVISORY OPINIONS

The judicial power of the federal courts is limited to "cases" or "controversies." U.S. Const., Art. III, sec. 2. Because of this constitutional limitation, federal jurisdiction may not be invoked simply because two litigants have differing views of the law. The court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Commission,* 220 F.3d 1134 (9th Cir.2000) (en banc).

The prohibition on advisory opinions, first announced in *Hayburn's Case,* 2 U.S. 408, 2 Dall. 409, 1 L.Ed. 436 (1792), is now a well-settled feature of Article III jurisprudence. *See Clinton v. Jones,* 520 U.S. 681, 700 n. 33, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) ("This Court early and wisely determined that it would not give advisory opinions even when asked by the Chief Executive.") (quoting *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.,* 333 U.S. 103, 113, 68 S.Ct. 431, 92 L.Ed. 568 (1948)). Regardless of whether the relief sought is monetary, injunctive or declaratory, in order for a case to be more than a request for an advisory opinion, there must be an actual dispute between adverse litigants and a substantial likelihood that a favorable federal court decision will have some effect. *See Calderon v. Ashmus,* 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998); *Plaut v. Spendthrift Farm,* 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). Here, the case concerns a hypothetical, rather than an "actual," legal dispute concerning proposed contract terms that may or may not be executed in the future. The question of whether a favorable resolution will have any effect hinges on the same contingencies. Thus, the case would appear to seek nothing more than an advisory opinion.

---

**3.** Although NRDC's comment letter was not specifically submitted in reference to Westlands' contract with the United States, the parties agree that the views expressed by NRDC in the letter would also apply to the Westlands contract.

As one commentator has explained, the advisory opinion prohibition stands at the "core" of Article III, and animates the justiciability doctrines of standing, ripeness, and mootness:

> [I]t is because the prohibition of advisory opinions is at the core of Article III that the other justiciability doctrines exist largely to ensure that federal courts will not issue advisory opinions. That is, "it is because standing, ripeness, and mootness implement the policies and requirements contained in the advisory opinion doctrine that it is usually unnecessary for the Court to separately address the ban on advisory opinions."

Chemerinksy, *Federal Jurisdiction*, 3d ed. (1999) at 56. Because the Supreme Court has provided considerably more guidance on ripeness and standing, it is usually more appropriate for courts to address the justiciability of a particular case in terms of those doctrines. As I now explain, plaintiff's complaint presents serious, indeed insurmountable, ripeness problems.

## B. RIPENESS

Although ripeness, like other justiciability doctrines, is "not a legal concept with a fixed content or susceptible of scientific verification," *Poe v. Ullman*, 367 U.S. 497, 508, 81 S.Ct. 1752, 6 L.Ed.2d 989, (1961), the Supreme Court has taught that the doctrine "is drawn both from Article III limitations on judicial power and from pru-

dential reasons for refusing to exercise jurisdiction," *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993).[4]

"Ordinarily, a claim involving the action of an administrative agency is fit for review only when the agency action is final." *Moore's Federal Practice*, 3d ed. § 101.76[1][c] (2002). This "final agency action rule" stems from the basic rationale of the ripeness doctrine. The "requirement that litigation be deferred until a controversy is 'ripe' for judicial resolution ... seeks to 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Rapid Transit Advocates, Inc. v. Southern California Rapid Transit District*, 752 F.2d 373, 378 (9th Cir.1985) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967));

In the matter-at-bar, there is no dispute that the relevant "administrative decision"—the decision whether to adopt and execute the contract terms at issue—has not "been formalized and its effects felt in a concrete way by the challenging parties." *Id.* On the contrary, Westlands concedes that the contract terms at issue are "tenta-

---

4. The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury-in-fact prong. Sorting out where standing ends and ripeness begins is not an easy task. Indeed, because the focus of the ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline. *Cf. United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (describing mootness as "the doctrine of standing set in a time frame.") (quoting Henry P. Monaghan, *Constitutional Adjudica-*

tion: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). The overlap between these concepts has led some legal commentators to suggest that the doctrines are often indistinguishable. *See, e.g.*, Erwin Chemerinsky, *A Unified Approach to Justiciability*, 22 Conn. L.Rev. 677, 681 (1990). In "measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing." Gene R. Nichol, Jr., *Ripeness and the Constitution*, 54 U. Chi. L.Rev. 153, 172 (1987).

tive." This fact strongly counsels against a finding of ripeness. *See Student Loan Mktg. Ass'n v. Riley,* 104 F.3d 397, 405 (D.C.Cir.1997) (among factors to consider in determining whether an agency's interpretation is "final for purposes of judicial review" is whether the interpretation is "labeled as tentative or otherwise qualified by arrangement for reconsideration").

■ Aside from the final agency action rule, several other settled ripeness rules indicate that this case is non-justiciable. "[A] federal court normally ought not resolve issues 'involving contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Clinton v. Acequia, Inc.,* 94 F.3d 568, 572 (9th Cir.1996). In *Clinton,* the Ninth Circuit held that a breach of contract claim presented "no live case or controversy" where the claim hinged on future conduct by one of the parties to the contract. *Id.; see also Portland Police Ass'n v. City of Portland,* 658 F.2d 1272, 1274 (9th Cir.1981). Here, the contract over which Westlands sues has not even been executed; the actual terms of the contract at the time of execution and the execution of the contract itself are both "contingent future events that may not occur as anticipated, or indeed may not occur at all." The rule applied in *Clinton* thus dictates that the instant case is not ripe.

## C. JUSTICIABILITY IN THE DECLARATORY JUDGMENT CONTEXT

Westlands argues that Article III's requirements are somehow relaxed in the context of a declaratory judgment action, and that NRDC's arguments concerning justiciability are therefore inapposite. This contention cannot lie. The Constitution does not require less of litigants simply because their claim is framed as an action for declaratory judgment. *See Calderon,* 523 U.S. at 745, 118 S.Ct. 1694. No authority supports the notion that a plaintiff in a declaratory judgment action must meet a lower threshold showing of actual controversy.

On the contrary, the Supreme Court has repeatedly recognized the increased likelihood that declaratory judgment actions will fall outside Article III. Before the enactment of the federal Declaratory Judgment Act, the Court expressed the view that a declaratory judgment was not within Article III's limits on federal judicial power at all. *Willing v. Chicago Auditorium Assn.,* 277 U.S. 274, 289, 48 S.Ct. 507, 72 L.Ed. 880 (1928). But in *Nashville, C. & St. L. Ry v. Wallace,* 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730 (1933), the Court held that it did have jurisdiction to review a declaratory judgment granted by a state court. And in *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), the Court decided that the federal Declaratory Judgment Act validly conferred jurisdiction on federal courts to issue declaratory judgments in appropriate cases. Despite this now well-settled conclusion, the Court has continued to "recognize[ ] the potential for declaratory judgment suits to fall outside the constitutional definition of a 'case' in Article III." *Calderon,* 523 U.S. at 745, 118 S.Ct. 1694.[5]

---

**5.** As this suit illustrates, declaratory judgment actions are particularly likely to present ripeness problems. "Like any suit filed in federal court, declaratory judgment actions are limited by the case-or-controversy requirement in general and the ripeness doctrine in particular. Thus, to be heard in federal court, a suit seeking a declaratory judgment cannot present a controversy that is uncertain or speculative. A tension thus exists between the declaratory judgment remedy and the doctrine of ripeness. On the one hand, a party seeking a declaratory judgment generally does so in anticipation of a future injury; on the other hand, the ripeness doctrine prevents courts from becoming involved in premature adjudication of disputes that are uncertain to occur

■ The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201; *see also* Fed. R.Civ.P. 57. The Act itself thus incorporates Article III's limitations and requires a specific finding that the case presents an "actual controversy." The cases cited by Westlands interpret this additional statutory requirement; they do not relax the constitutional requirements. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).; *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646 (9th Cir.2002).

## IV.

### THE NOERR–PENNINGTON DOCTRINE

Finally, plaintiff and the *amicus* California Attorney General argue that this lawsuit should be dismissed pursuant to the Noerr–Pennington doctrine because it seeks to attack constitutionally-protected petitioning activity. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). Indeed, the only dispute involved here is Westlands' disagreement with the views expressed in NRDC's public comment letter.[6]

■ Under the Noerr–Pennington doctrine, "[t]hose who petition government for redress are generally immune from antitrust liability." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). The doctrine immunizes petitions directed at any branch of government, including the executive, legislative, judicial and administrative agencies. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Manistee Town Center v. City of Glendale*, 227 F.3d 1090 (9th Cir.2000). "*Noerr* immunity bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity." *Gen–Probe, Inc. v. Amoco Corp.*, 926 F.Supp. 948, 956 (S.D.Cal.1996).

■ Westlands cites a law review arguing that the Noerr–Pennington doctrine should be limited to antitrust cases, the context in which it originally arose. The Ninth Circuit has long since rejected that argument. *See Manistee*, 227 F.3d at 1095 ("The immunity is no longer limited to the antitrust context; we have held that Noerr–Pennington immunity applies to claims under 42 U.S.C. § 1983 that are based on the petitioning of public authorities."); *Boulware v. Nevada Dep't of Human Resources*, 960 F.2d 793, 800 (9th Cir.1992); *Evers v. County of Custer*, 745 F.2d 1196, 1204 (9th Cir.1984). In a last ditch effort, Westlands also argues that the doctrine should be limited to suits

or contingent in nature." *Moore's Federal Practice*, 3d ed. § 101.80[1] (2002).

**6.** The Attorney General argues that Westlands' suit is, in effect, a SLAPP (a Strategic Lawsuit Against Public Participation), *i.e.* a meritless lawsuit based on NRDC's having exercised its First Amendment right to petition the government. Although there is no anti-SLAPP statute that applies to federal claims in federal courts, as there is under

California law, *amicus* argues that federal courts are equally intolerant of SLAPPs and dismiss such suits under the federal rules and substantive law. *See, e.g., Oregon Natural Resources Council v. Mohla*, 944 F.2d 531 (9th Cir.1991) (affirming dismissal of timber company's counterclaims against environmental group for interference with business relations and abuse of process based on group's history of petitioning the federal government to restrict company's logging activities).

seeking "civil liability" and that the immunity therefore cannot cover declaratory judgment actions. I can find no authority supporting this limitation and Westlands cites none.[7] Nor is it clear what is meant by "civil liability," since it is clear that the Noerr–Pennington doctrine extends beyond claims for civil damages.

Whatever the scope of such a proposed limitation, it would make little sense from a policy perspective. As both NRDC and *amicus* have argued, an action seeking a declaratory judgment (regardless of whether, as here, fees and costs are also sought), may force a citizen who petitions the government to incur the expense of defending his position in court and may therefore have precisely the sort of chilling effect on protected petitioning activity that the Noerr–Pennington doctrine is designed to prevent. *See BE & K Constr. Co. v. National Labor Relations Bd.,* 536 U.S. 516, 536, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002)(noting, in Noerr–Pennington context, that suits may be brought out of a "motive to impose the costs of the litigation process").

Therefore, this action must be dismissed, both because it fails to present a justiciable case or controversy under Article III and because it is barred by the Noerr–Pennington doctrine. Because these defects are not curable, Westlands' request for leave to amend the complaint must also be denied.

## V.

## CONCLUSION

For the foregoing reasons, the court hereby ORDERS as follows:

1. Defendant's motion to dismiss is GRANTED.

2. Judgment shall be entered against the plaintiff with prejudice.

3. The Clerk is directed to CLOSE the case.

---

7. In support of their position that the Noerr–Pennington doctrine does not apply to declaratory relief actions, plaintiffs cite two district court cases, *Miller Pipeline Corp. v. British Gas,* 69 F.Supp.2d 1129, 1138–39 (S.D.Ind. 1999) and *Versatile Plastics, Inc. v. Sknowbest! Inc.,* 247 F.Supp.2d 1098, 1099 (E.D.Wis. 2003). As defendant points out in its reply brief, however, it is evident that neither of these cases stands for the proposition for which it is cited. Moreover, even if they did, the court would not be able to follow them, under the compulsion of the Ninth Circuit's broad reading of Noerr immunity.